In re Estate of William H. McCrea, deceased.  Appeal
of Lewis Eppelsheimer and Martin H. Stutzrach, Ex-
ecutors of Sarah McCrea, deceased.

*Will—" Right heirs "—Remainder.*

Testator bequeathed a sum of money in trust to pay the income to his
wife for life, and then to his sisters or the survivor for life, " and at the
death of my said wife and sisters to pay over the same to my right heirs."
*Held,* that the words " right heirs " mean the heirs of the testator who
were living at the date of his death.  In such a case the words " right
heirs " are words of purchase, and are as plain a descriptio personarum
as though he had mentioned the parties by their individual names.  They
do not, however, include the testator's widow.

Argued Jan. 13, 1897.  Appeal, No. 489, Jan. T., 1896, by
Lewis Eppelsheimer and Martin H. Stutzrach, from decree of
O. C. Phila. Co., July T., 1896, sustaining exceptions to adju-
dication.  Before STERRETT, C. J., GREEN, WILLIAMS, Mc-
COLLUM, MITCHELL, DEAN and FELL, JJ.  Affirmed.

Exceptions to adjudication.

From the adjudication it appeared that William H. McCrea
died on September 1, 1863, leaving a will by which he directed
as follows :

" I give, devise and bequeath all my estate, real and personal
(except as hereinafter mentioned) to my beloved wife Sarah Mc-
Crea, her heirs, executors, administrators and assigns forever.

" Item : I give and bequeath the sum of $2,500 out of my
estate to my executors hereinafter named, and the survivor of
them in trust to invest the same upon good bond and mortgage
security, and to pay over the interest thereof to my said beloved
wife during her natural life and at her death, should my sisters
Eliza McCrea and Mary Foster or either of them survive her,
then to pay over the interest thereof to them, my said sisters,
or the survivor thereof, and at the death of my said wife and
of my said sisters, then to pay over the same to my right heirs."

The auditing judge, FERGUSON, J., awarded one half of the
fund of $2,500, after the death of testator's widow and both
sisters to the executors of the widow, and the other half to the
testator's collateral heirs.

Exceptions to the adjudication were sustained, ASHMAN, J., filing the following opinion :

The word "heirs" when used to denote succession in a gift of personalty is always a misnomer, because "heirs" is a word of limitation, and there can be no limitation, in strictness, of a chattel interest. Its popular meaning comprehends those who succeed to the property of an ancestor, and hence includes next of kin and those who take under the statutes of distribution as well as heirs-at-law. The courts are forced to accept this definition where a gift of personalty is to one and his heirs, or to one for his life and then to his heirs. In Comly's Estate, 136 Pa. 153; Neely's Estate, 155 Pa. 133, and Ashton's Estate, 134 Pa. 390, the gift was, after a life estate to the first taker, to his heirs, and it was held that those parties were entitled who were named in the statutes of distribution. In Eby's Appeal, 84 Pa. 241, Patterson v. Hawthorn, 12 S. & R. 113, and McGill's Appeal, 61 Pa. 46, the gift was to certain persons or their heirs, and "heirs" was held to mean personal representatives, making the bequest equivalent to a gift to the first takers, their executors and administrators. In none of these cases could there be any doubt as to the meaning of the testator, and in each the courts adopted the word which he had inartificially applied to a gift of personalty, and gave to it that of next of kin or of personal representatives, because that was the meaning which he had evidently placed upon it. But they did that simply from necessity and in order to give effect to the testamentary purpose. Where the purpose is not clearly expressed to the contrary, authority is equally abundant to show that they will adhere to the technical meaning of the word, for the ample reason, among others, that every intendment is to be made in favor of the heir : Ivins's Appeal, 106 Pa. 176; Keys' Estate, 4 District Reps. 281; Stewart's Estate, 147 Pa. 383. The sole question here is, what did the testator mean by the phrase "my right heirs?" If a lawyer had written the will, and there is nothing to forbid the idea that it was the work of a professional hand, there could be no misgiving as to the answer. The bequest was of $2,500 in trust to pay the income to testator's wife for life, and then to his sisters or the survivor for life, "and at the death of my said wife and sisters to pay over the same to my right heirs." The words "right heirs" were as

plain a descriptio personarum as though he had mentioned the parties by their individual names. His right heirs were his heirs at common law, and he used the words properly as words of purchase. Indeed he could have substituted no others, because he could not know who among the class would answer to that description at his death. But we need not labor a point which has passed into text law. "Where the word 'heirs' is used, not to denote succession or substitution, but to describe a legatee, and there is no context to explain it otherwise, it should seem that there is no reason to depart from the natural and ordinary sense of the word:" 2 Wms. on Executors, 1195. " A bequest of personalty to the right heirs or to the heirs-at-law or the next heir of an individual, prima facie goes to such heir as persona designata, whether the bequest be to the heirs of the testator or of a stranger:" Theobald on Wills, 167. In Mounsey v. Blamire, 4 Russ. 384, the gift was "to my heir £4000," and in Hamilton v. Mills, 29 Beav. 193, to "the right heir," and in both the heirs-at-law and not the next of kin were held to be intended. See also DeBeauvoir v. DeBeauvoir, 3 H. of L. 524; In re Rootes, 1 Dr. & Sm. 228 ; Southgate v. Clinch, 27 L. J. Ch. 651.

We concur in the ruling of the auditing judge that the heirs of the testator who take are those who were living at the date of his death: Stewart's Estate, 147 Pa. 383 ; but we differ from his finding that the personal representatives, some of whom are strangers to his blood, were among his heirs.

The exceptions are therefore sustained.

*Errors assigned* were in sustaining exceptions to adjudication.

*Frank T. Lloyd*, for appellants.—In a bequest of personalty, unless a contrary intent is indicated by the will, the word "heirs" signifies the testator's heirs as ascertained by the statute of distribution: McKee's App., 104 Pa. 573 ; Eby's App., 84 Pa. 241 ; Ashton's Est., 134 Pa. 390 ; Masonic Aid Assn. v. Jones, 154 Pa. 105 ; Gilmor's Est., 154 Pa. 523 ; Neely's Est., 155 Pa. 133.

Keys' Est., 4 Dist. Rep. 281, referred to in the court below, was a decision in that court, and was a case of real estate converted by the will.

Ivins's App., 106 Pa. 176, was a case of realty and personalty

combined, and is not only an unfortunate citation by the court below, but most forcibly sustains our contention in this case. It was contended by counsel in the court below that the widow herself, being the life tenant, an intention to exclude her is apparent.   This position is untenable : Busby's App., 61 Pa. 116.

*Peter Boyd* and *N. H. Larzelere*, for appellee were not heard, but cited in their printed brief : Theobald on Wills, 2d ed. 273 ; 29 Am. & Eng. Ency. of Law, 437 ; Henderson v. Henderson, 1 Jones Law Rep. (N. C.) 221 ; Stewart's Est., 147 Pa. 383 ; Porter's App., 45 Pa. 201 ; and argued that the cases cited by appellants sustained appellee's position.

Per Curiam, January 25, 1897 :

We think the court below was right in sustaining exceptions to the adjudication, and in awarding the balance for distribution to the brothers and sisters of the decedent.   It is unnecessary to add anything to what has been said by the learned judge of the orphans' court.   On his opinion the decree is affirmed and appeal dismissed at appellants' costs.