# Tatham's Estate.

*Wills—Construction—Vested and contingent estates—Ascertainment of class—Time of vesting—Decedents' estates—Real estate—Conversion.*

1. The law favors vested rather than contingent estates, and unless it clearly appears from the context or the circumstances of the case that a contingent interest was intended, the remainder will be regarded as vesting at the death of the testator, and not at the expiration of the life tenancy.

2. A devise of real estate to one for life, with remainder to the testator's heirs, vests the remainder in those who answer such description at the time of his death, unless the will affords clear and unequivocal evidence to the contrary, and it is immaterial that the life tenant is one of the class who will take the remainder.

3. Testator by will gave his residuary estate to his executors in trust for the benefit of his widow and children during the lifetime of the widow, and in case of the death of the sons before their mother, for the benefit of their children or widows, and if they died leaving neither issue nor widows, then the entire residue should be held for the use of the widow during her life; testator gave his wife a power of appointment, and further provided that in the absence of the exercise of such power, "then I devise and bequeath the entire reversion to my lawful heirs and distributees as provided by the intestate laws of the Commonwealth of Pennsylvania." By a codicil, testator revoked the power of appointment to his wife, except as to $30,000 of his estate, and provided "as to the rest, residue and remainder of my estate, and as to the whole of it, in case my wife makes no such appointment, I give, devise and bequeath the same to my executors and trustees and the survivor and heirs of the survivor of them, as named in my will, in trust, to distribute the same—in case my sons are both dead, leaving at the time of the death of my wife no lawful issue surviving—to my own right heirs and distributees as provided by the intestate laws of the Commonwealth of Pennsylvania." In his will testator provided that the gifts of income to his wife should be "in lieu and satisfaction of dower and her interest in my estate as if under the intestate laws of Pennsylvania." The sons died prior to their mother, leaving no lawful issue surviving them. *Held,* (1) the "right heirs and distributees" of testator were to be ascertained as of the date of his death, and not as of the date of the death of the widow; (2) that the widow was excluded from

the class by necessary implication from the language of testator's will; (3) that the residue should be awarded to the estates of the two sons, to the exclusion of collateral heirs.

4. Where, in such case, certain of the real estate of testator was condemned by the United States government during the lifetime of the widow, and prior to the death of one of the sons, and damages therefor were paid to the trustees, the sum so paid is not to be distributed as personalty, but as realty.

Argued March 31, 1915. Appeals, Nos. 104, 105, 109 and 146, by Richard S. Hunter, executor of the Estate of Catherine L. Tatham, deceased, administrator of the estate of George N. Tatham, Jr., deceased; Mary E. Tatham, administratrix C. T. A. of Edmund R. Tatham, deceased, and Caldwell K. Biddle, executor of Catherine K. Tatham, widow of William P. Tatham, deceased, from decree of O. C. Philadelphia Co., October T., 1889, No. 242, dismissing exceptions to adjudication, in estate of George N. Tatham, deceased. Before MESTREZAT, POTTER, ELKIN, MOSCHZISKER and FRAZER, JJ. Reversed.

Exceptions to adjudication. Before LAMORELLE, J.

The court in banc sustained certain exceptions and dismissed others in an opinion by ANDERSON, J. Richard S. Hunter, executor of the Estate of Catherine L. Tatham, deceased, administrator of the Estate of George N. Tatham, Jr., deceased; Mary E. Tatham, administratrix C. T. A. of Edmund R. Tatham, deceased, and Caldwell K. Biddle, executor of Catherine K. Tatham, widow of William P. Tatham, deceased, appealed.

The opinion of the Supreme Court states the facts.

Errors assigned were in dismissing the exceptions.

Owen J. Roberts, of Roberts, Montgomery & McKeehan and J. T. Richards, with them Robert T. McCracken, for Richard S. Hunter, executor of Catherine L. Tatham, deceased, and administrator of George N. Tatham, Jr., deceased, appellant.—Testator having provided that on

the death of his wife, in case both his sons should then be dead, leaving no issue, his entire residuary estate should be distributed to his "own right heirs and distributees as provided by the intestate laws of the Commonwealth of Pennsylvania," such distributees are to be ascertained and determined as of the date of his death, and not as of the date of the death of his widow, Catherine L. Tatham: Riehle's App., 54 Pa. 97.

When the class of distributees is to be ascertained as of the date of testator's death, the widow and sons are not debarred as such distributees merely because the distribution of principal is postponed beyond the termination of their lives: Buzby's App., 61 Pa. 111; Stewart's Est., 147 Pa. 383.

Testator's widow was one of the distributees of his personal estate particularly designated by the intestate laws of the Commonwealth. By reference to those statutes in the codicil testator specifically identified her as one of the residuary legatees as fully as if he had mentioned her by name: McCrea's Est., 180 Pa. 81.

The fact that the will stated that the annuity and other payments to the wife should be in lieu of dower and her interest in the estate as if under the intestate laws, does not bar her under the plain provisions of the residuary clause of the codicil, which was executed nearly two years later than the will: Farnum's Est., 3 Del. Co. 467; Stickle's App., 29 Pa. 234; Simpson's Est., 245 Pa. 244.

The widow is entitled to every presumption and intendment, not only because she is the widow, but because she is a purchaser: Reed v. Reed, 9 Watts 263; Finney's App., 113 Pa. 11; McCallum's Est., 211 Pa. 205.

The power of appointment over $30,000 given to the widow by the codicil was not in conflict with the subsequent gift of a distributive share in the corpus of the estate. It does not indicate that testator did not intend the widow to take what the terms of the final distributive clause expressly gave her: Sigel's Est. (No. 1), 213 Pa.

14; Fahnestock's Est., 147 Pa. 327; Rawlinson v. Wass, 16 Jurist 282, 9 Hare 673; Wilkinson v. Garrett, 2 Coll. C. C. 643, 10 Jurist 560.

*John Douglass Brown,* for Caldwell K. Biddle, executor of Catherine K. Tatham, deceased, appellant.—It is a rule of law that interests should be held to be vested, rather than contingent; a rule of construction that testator presumably realizes that his will becomes effective at his death. In using such an expression as "my heirs" testator clearly referred to such persons as would answer that description when the will should take effect: Walker v. Dunshee, 38 Pa. 430.

*Shippen Lewis,* of *MacCoy, Evans, Hutchinson & Lewis,* for Mary E. Tatham, administratrix C. T. A. of Edmund R. Tatham, deceased, appellant.

*C. J. Hepburn,* for Benjamin Tatham, William Welsh Welsh and Caroline T. Williams, appellees; and *M. Hampton Todd,* for Charles Tatham, Frank Tatham, Edwin Tatham, Isabella Tatham, Anne P. Edison and Elizabeth Dick, appellees.—Recourse to the aid of artificial canons of construction is unnecessary here, as the actual intention in the mind of the testator clearly appears from the four corners of the will: Wood v. Schoen, 216 Pa. 425.

The gift by implication to testator's sons, in the event of their survival, negatives an intention to designate them as distributees in the event of their nonsurvival: Boston Safe Deposit and Trust Co. v. Blanchard, 196 Mass. 35.

The codicil contains no gift to testator's heirs and distributees other than such as is implied in the direction to distribute upon the happening of an uncertain event —wherefore, the estate will not vest until the happening of the event, and then only in the persons answering the description as of the time appointed for distribution:

Peirce v. Hubbard, 152 Pa. 18; Delaney v. McCormack, 88 N. Y. 174; Salter v. Drowne, 126 N. Y. Supp. 686; De Wolf v. Middleton, 31 L. R. A. 146; Barr v. Denney, 79 Ohio St. 358; Brown v. Wright, 194 Mass. 540; In re Bowers, 109 App. Div. (N. Y.) 566.

By the inclusion among the life tenants of all who would answer the description of heirs at the time of testator's death, an intention is ipso facto shown that the class shall be determined as of the date of the termination of the life estates: Donohue v. McNichol, 61 Pa. 73; Walker v. Dunshee, 38 Pa. 430; Philadelphia Trust, Safe Deposit and Insurance Co.'s App., 108 Pa. 311; Merrefield's Est., 5 Pa. D. R. 463; McKee's Est., 198 Pa. 255; Sears v. Russell, 74 Mass. 86; Welch v. Brimmer, 169 Mass. 204; Heard v. Read, 169 Mass. 216.

*John G. Johnson,* with him *William Barclay Lex,* for John C. Bullitt, 3d, appellee.—The class called by testator "my own right heirs and distributees" is to be fixed and determined as of the date of the death of the widow, not of the date of the death of the testator.

It is the tendency of the law to avoid forced constructions induced by the arbitrary following of rules and to give the fullest possible play to the expressed, evident intent of testators, as shown in their testamentary writings: Buzby's App., 61 Pa. 111; Wood v. Schoen, 216 Pa. 425.

OPINION BY MR. JUSTICE POTTER, July 3, 1915:

Four appeals from the decree of the Orphans' Court of Philadelphia County, making distribution of the Estate of George N. Tatham, deceased, were presented and were argued together, and they will all be considered in this opinion. From the history of the case, as given by counsel, it appears that George N. Tatham died August 19, 1888, leaving a last will, dated March 24, 1885, and a codicil, dated December 9, 1886. He was survived by his wife, Catherine L. Tatham, and by two sons, George

N. Tatham, Jr., and Edmund R. Tatham. One son, George N. Tatham, Jr., died December 26, 1903, intestate, unmarried and without issue. The other son, Edmund R. Tatham, died June 9, 1911, leaving to survive him a widow, Mary E. Tatham, and no issue. By his will he gave his whole estate to his wife. The testator's widow, Catherine L. Tatham, died May 15, 1914, testate, and appointed as her executor, Richard S. Hunter, one of the appellants here. He is also administrator of the estate of George N. Tatham, Jr. The testator was also survived by three brothers, William, Henry and Charles, and by three children of a brother Benjamin, who was not living at the date of testator's death. The three brothers, William, Henry and Charles, all died during the lifetime of testator's widow. Descendants of all these brothers are now alive, with the exception of William, who left no children.

By his will dated March 24, 1885, testator gave his residuary estate to his executors in trust for the benefit of his widow and children during the lifetime of the former, and further provided: "Article XXII. And upon further trust that in case of the death of either of my sons, or both during the lifetime of their mother, my said executors and trustees shall continue to hold the remainder of my residuary estate, and the investments for annuities after their termination, and shall collect the interest, and income from the same, and shall apply the proportions of the same respectively for the use of any widow or lawful issue or children of either of my sons, then living, or the issue of such as may be then dead, such parties taking in equal shares, per stirpes in all cases. And if either or both of my sons should die without having any widow or lawful issue, then the whole residuary interest of such son or sons shall go to and be paid by my executors and trustees to my wife, if then living, for her separate use for her natural life, and the principal of the same shall be paid and distributed by my executors and trustees after her death in accord-

ance with the terms of her will, or in the absence of such testamentary direction then I devise and bequeath the entire reversion to my lawful heirs and distributees as provided by the intestate laws of the Commonwealth of Pennsylvania."

By a codicil, dated December 8, 1886, testator provided: "And whereas in the XXII Article of my will, I have given to my wife a power of appointment by will in case she survives my sons or either of them and their issue, now I revoke so much of said XXII Article as confers such power of appointment, and in lieu of what I have said upon that subject in my will, I declare my will to be that my wife shall have and I hereby give her, the absolute power of appointment, by her will, over thirty thousand ($30,000) dollars of my estate. And as to the rest, residue and remainder of my estate, and as to the whole of it, in case my wife makes no such appointment, I give, devise and bequeath the same to my executors and trustees and the survivor and heirs of the survivor of them, as named in my will, in trust, to distribute the same—in case my sons are both dead, leaving at the time of the death of my wife no lawful issue surviving—to my own right heirs and distributees as provided by the intestate laws of the Commonwealth of Pennsylvania. As to all other matters I direct that said XXII Article shall remain as it now stands and I expressly confirm and republish my said will with the alterations thereto made hereby."

After the death of the widow the surviving trustee filed his seventh and final account. Upon the audit before LAMORELLE, J., various conflicting claims were made upon the principal sum awaiting distribution. The auditing judge ruled that the "heirs and distributees" of testator were those who answered to this description at the time of testator's death; he held further that the widow was excluded as one of the class by the terms of the will; that the estates of the two sons were entitled to the estate of testator, subject to the payment of an

annuity to the widow of one of the sons during her widowhood, and also subject to the payment of $30,000, which was disposed of by the widow under the power of appointment given to her by testator. Exceptions were filed on behalf of all parties, and the court in banc sustained certain of them filed by nieces and nephews of the testator, and by the widow of one of his sons. It decided that the testator must be held to have intended that his heirs were not to be determined at the date of his death, but that they were to be ascertained only after all the life interests were terminated, which occurred at the date of the death of his widow. The result of this conclusion was to exclude the estate of the widow, and the estates of both sons of testator from participation in the residue of testator's estate. The soundness of this conclusion is the first and principal question raised by the assignments of error. That the class described as testator's "heirs," to whom a remainder or executory interest is given by a will, are to be ascertained at the death of the testator, is admittedly the general rule. This is so well recognized, that nothing but the expression of a clear intention to the contrary in the will, can be allowed to alter the rule. In one of our latest cases in which the subject was considered, Bache's Est., 246 Pa. 276, Mr. Justice MESTREZAT said (p. 279) : "It is settled by a long line of decisions in this State that a devise of real estate to one for life with remainder to the testator's heirs vests the remainder in those who answer such description at the time of his death unless the will affords clear and unequivocal evidence to the contrary; and it is immaterial that the life tenant is one of the class who will take the remainder: Stewart's Est., 147 Pa. 383; Buzby's App., 61 Pa. 111. The law favors vested rather than contingent estates and unless it clearly appear from the context or the circumstances of the case that a contingent interest was intended, the remainder will be regarded as vesting at the death of the testator and not at the expiration of the life tenancy." And in McFillin's

Est., 235 Pa. 175, it was said per curiam (p. 177) : "The thoroughly settled rule of construction is that where a testator directs that in a certain event after the expiration of a particular interest the estate shall go to his heirs or next of kin, or to the persons who would take under the intestate law, he is to be understood as meaning the persons who would have so taken at the time of his death, and not at the time appointed for taking, unless a different intent is plainly manifested in his will: Buzby's App., 61 Pa. 111; Stewart's Est., 147 Pa. 383; Fitzpatrick's Est., 233 Pa. 33." In the case last cited, Fitzpatrick's Est., the bequest was, after a life estate, to testator's legal heirs. Mr. Justice ELKIN said (p. 34) : "The learned court below directed the distribution to be made to the 'legal heirs' of the testator living at the time of his death. In so doing he applied a rule of construction of almost universal application. The rule is never varied unless from the four corners of the will a different intention clearly appears." It was there held that the estate of the life-tenant, who was a sister of testator and one of his next of kin, was entitled to share in the distribution of the principal.

The question then to be determined is, whether anything is to be found in the will or codicil of George N. Tatham, which clearly indicates that in using the expression "my own right heirs," he did not refer to such persons as were his heirs at the date of his death. We have looked in vain for anything to show that the testator used the word "heirs," in any other than the ordinary sense. The relationship was at once fixed, at the date of his death. He gave his estate to his "own right heirs and distributees, as provided by the intestate laws." None but those upon whom the law cast the descent at the date of testator's death, would answer to that description. It adds no weight to the argument against giving to the words their natural and legal significance, to say that testator has only done that which the intestate law would have done for him. It was his privilege to

say that under certain circumstances he was content to
have his estate go in accordance with the intestate laws.
Nor will it do, to say that the application of the settled
rule will in this case lead to peculiar and unusual re-
sults, which the testator would perhaps have wished to
avoid, had they occurred to him. With the results of
testator's action in so far as it may take property from
one line of descent, and place it in another, we have noth-
ing to do. If the testator had really meant that his es-
tate should go to collateral heirs, or to those who might
have been his heirs, had he outlived his wife and his two
sons, he could easily have said so. We find nothing in
the context to control the natural meaning of testator's
words or to indicate, much less to demonstrate, that he
intended to exclude the tenants for life, from his descrip-
tion of his "own right heirs and distributees." Upon
its facts, we are unable to distinguish the present case
from Stewart's Est., 147 Pa. 383. The principle there
discussed and applied is directly in point here, and re-
quires us to hold that when the testator directed that his
estate should go to his own "right heirs and distrib-
utees," he meant the persons who would have taken as
such at the time of his death. That class as then con-
stituted, consisted of the widow and two sons. The
auditing judge held, however, that the widow of the tes-
tator is excluded from that class by necessary implica-
tion. Counsel for the administratrix of Edmund R.
Tatham, one of the deceased sons, also urges in argu-
ment, that the testator excluded the widow directly, by
providing that the gifts of income shall be "in lieu and
satisfaction of dower and her interest in my estate as if
under the intestate laws of Pennsylvania." The refer-
ence is to an interest similar to that given by the in-
testate laws, and as the only such interest mentioned,
was the one given to "my own right heirs and distrib-
utees," it is contended that it is a fair inference, that the
testator by this statement intended to exclude the widow
from sharing as one of the "right heirs and distributees."

This suggestion is strengthened by the fact that the reference is only to "gifts of income." Nothing is said as to gifts of principal in this connection, and this omission would indicate that no gift of principal was intended. The auditing judge also held that the provisions in regard to the power of appointment showed a "clear and unequivocal intention" to exclude the widow from the class of right heirs and distributees, by necessary implication. The testator expressly limited the amount of money over which that power was to be exercised. And it is argued that he could not have intended to enlarge that power through the round about method of a gift to "distributees." The question is not free from difficulty, but after full consideration we feel impelled to agree with the conclusion that the testator did not intend to include his widow as one of his right heirs and distributees. We think it may fairly be inferred from the testator's language, that he intended the gifts of income to be the only interest of his wife in the estate, and that he gave them to her instead of a share in the principal, as one of his heirs and distributees. This interpretation best harmonizes and makes effective the language of both the will and the codicil. As to this aspect of the case it seems to fall squarely within the lines of the decision in Sullivan v. Straus, 161 Pa. 145. There the testator expressly provided that his son John was to have no part of his estate, and then added immediately: "It must be perfectly understood that all of my estate belongs to my children and grandchildren." This court said: "After this language it is altogether impossible to hold that the testator intended, or was even willing, that John should take any part of his estate. Of course if after that, he had expressly given a legacy to this son by name, he would take the gift because it was expressed subsequent to the exclusion. But it cannot be done by a mere implication even when the subsequent gift is to a class which would include John." In the present case we have express exclusion by the testator from a gift to

which reference is specifically made. In addition the fact appears that the codicil was drawn for the purpose of limiting the widow's power of disposition over the corpus of the estate.

It is clear from the codicil that the testator intended that distribution of his estate should be made at the death of his wife. He directed his executors and trustees to distribute the estate at that time, saying that in case his two sons were then both dead leaving no lawful issue surviving, the distribution was to be then made to his "own right heirs and distributees as provided by the intestate laws." The annuity payable to the widow of Edmund R. Tatham, testator's son, would, therefore, necessarily cease at the time fixed for the distribution of the corpus of the estate.

The appellant, Richard S. Hunter, as executor of the widow, filed the following exceptions to the adjudication:

"9. The learned auditing judge erred in holding that the interest of George N. Tatham, Jr., in the proceeds of the real estate condemned and taken and paid for by the United State Government subsequent to testator's death, and prior to the death of George N. Tatham, Jr., was, after the date of the condemnation and payment, real estate and not personalty.

"10. The learned auditing judge erred in not awarding to the estate of George N. Tatham, Jr., and through that estate to the estate of Catherine L. Tatham, deceased, the one-half of the proceeds of the condemnation proceedings whereby certain real estate known as Windmill Island, was condemned, taken and paid for by the United States Government, prior to the death of George N. Tatham, Jr."

The court below dismissed these exceptions, and its action in so doing is made the subject of the ninth and tenth assignments of error, under the appeal of Richard S. Hunter, executor of Catherine L. Tatham, deceased. The court below was right in dismissing these excep-

tions, and in excluding the widow's estate from participation in the fund derived from testator's interest in Windmill Island. The controlling principle is illustrated in Henszey's Est., 220 Pa. 212; it there appeared that land was sold by executors and trustees more than two years after testator's death under a discretionary power of sale, and it was held that the proceeds must be regarded as real estate for purposes of distribution, the interest of the devisees having vested at the date of testator's death. After reviewing the decisions we there said: "The conversion did not take place until the actual sale by the trustees under their discretionary power. But at that time, the law had already determined the respective interests of Mrs. Henszey and her children in the land sold, and those interests could not be altered by the act of the trustees....... We think it may properly be considered a sound rule, that a sale made by trustees, for the convenient management of the trust, and not under positive directions in the will, does not alter the course of distribution." In the case at bar, the property was taken under proceedings in the exercise of the power of eminent domain, and they could certainly have no more effect in altering the course of distribution, than a sale made by trustees for the convenient management of the estate.

In Hunter's appeals, the assignments of error from one to five inclusive are dismissed. These assignments all relate to the right of the estate of Catherine L. Tatham, widow of testator, to participate in the distribution. Assignments six and seven relate to the action of the court below in holding that the annuity to the widow of Edmund R. Tatham continued after the death of testator's widow, and in awarding $30,000 to the surviving trustee to be set aside for the payment of such annuity. These assignments are sustained. The eighth assignment is to the refusal of the court below to award the principal of testator's residuary estate to the estates of his widow and sons in equal one-third parts. This as-

signment is dismissed, as are also assignments nine and
ten, which relate to the distribution of that part of the
fund derived from the appropriation and sale of testa-
tor's interest in Windmill Island.    Assignments num-
ber eleven and twelve are sustained.

In the appeal of Mary E. Tatham, administratrix, as-
signments one to five inclusive, are to the action of the
court below in sustaining exceptions to the adjudication,
and thereby holding that the distributees were to be as-
certained under the intestate law as of the date of the
death of testator's widow, and not as of the date of his
own death.    We agree with the conclusion of the audit-
ing judge in this particular, and all these assignments
are, therefore, sustained.    The sixth assignment, which is
to the final decree, is also sustained.

In the appeal of Caldwell K. Biddle, executor of Cath-
erine K. Tatham, we find no merit in any of the assign-
ments of error which raise questions peculiar to that ap-
peal, and they are all dismissed.

The decree of the Orphans' Court is reversed, and it is
ordered that the record be remitted to the court below
for further proceedings in accordance with this opinion.