Barge's Estate.

Argued March 10, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*Nathan M. Balliet,* with him *Ulysses S. Koons,* for appellants.

*Daniel P. Dougherty,* with him *Frank X. York,* for appellees.

*Murdoch K. Goodwin,* with him *Arthur Littleton,* of *Morgan, Lewis & Bockius,* for appellees.

OPINION BY STADTFELD, J., April 15, 1937:

Benjamin F. Barge died October 30, 1902, leaving a will whereby he set up various trusts for certain designated individuals. By the Seventh item thereof he gave certain securities in trust to pay the net income therefrom to his sister, Elina Reyer, for life and upon her death to pay said income to her husband, Owen Reyer, for life, and upon the death of both of said life tenants, to distribute the principal of the trust to testator's next of kin as provided by the intestate laws of the State of Pennsylvania had the testator died intestate.

Elina Reyer died without issue, in 1923 (her husband having predeceased her), which terminated the trust. The trustee then filed an account of this trust in the lower court and distributed the principal to Mary A. McCourt (appellant), Martha E. Hurlbut (appellant), Thomas G. Stockhausen and Thomas J. Beck, who were the testator's next of kin on the date of the death of said life tenant.

Testator by the Fifteenth paragraph of his will gave certain securities in trust to pay the net income therefrom to his nephew, Thomas J. Beck, for life and upon his death without leaving issue or widow to distribute the principal of the trust to testator's next of kin as provided by the intestate laws of the State of Pennsylvania had the testator died intestate.

Thomas J. Beck, the life tenant, died August 30, 1935, without leaving issue or widow, his next of kin being said Mary A. McCourt (appellant), Martha E. Hurlbut (appellant), and Thomas G. Stockhausen.

The auditor appointed by the lower court to audit the trustee's account in the trust for Thomas J. Beck, held that the testator's next of kin were to be determined as of the date of the death of testator, such persons being testator's sisters, Julia Beck, who died May 1, 1916 and Elina Reyer, who died in 1923, and awarded one-half of the fund to Julia Beck's legatees under her will and the other one-half to the executors of the will of Elina Reyer.

Julia Beck left a will giving her estate in equal shares to her husband, Amandus Beck (who died in 1917, leaving no estate), her daughter, Martha E. Hurlbut (appellant), her daughter, Mary A. McCourt (appellant), her son, Thomas J. Beck, and her grandson, Thomas G. Stockhausen; so that the award of the first one-half was made to Martha E. Hurlbut (appellant), Mary A. McCourt (appellant), Thomas G. Stockhausen and the Executors of the will of Thomas J. Beck, deceased, in equal shares.

Exceptions to the auditor's Report were filed by the said Mary E. Hurlbut (appellant), and Mary A. McCourt (appellant), on the ground that testator's will showed an intention that his next of kin should be determined as of the date of the death of the life tenant, Thomas J. Beck; said next of kin at that time being Martha E. Hurlbut (appellant), Mary A. McCourt (ap-

pellant), and Thomas G. Stockhausen, to whom the entire balance for distribution should have been awarded in equal shares.

The lower court (THOMAS, P. J.) on May 12, 1936, entered an order or decree dismissing the said exceptions and confirming the auditor's report and awarding distribution in accordance therewith. Exceptions to said order or decree were thereupon duly allowed and Bill sealed. This appeal followed.

The decedent having died in 1902, the Act of June 29, 1923, P. L. 914, does not apply. In *Warne's Estate,* 302 Pa. 386, 391, 153 A. 688, the Supreme Court has said: "It will not be questioned that a will, effective prior to the Act of June 29, 1923, P. L. 914 . . . . . . refers to those entitled to take as of the date of the testator's death (*Stoler's Est.,* 293 Pa. 433; *Kidd's Est.,* 293 Pa. 56), unless a contrary purpose is made evident by the language used . . . . . ."

The rule that heirs are to be determined as of the testator's death is still being applied by our Supreme Court where the death of the testator was prior to December 31, 1923. *Whiteside's Estate,* 302 Pa. 452, 153 A. 728; *Bechtel's Estate,* 303 Pa. 107, 154 A. 366.

The simple question here is, did the testator limit the estate to those entitled under the intestate laws, to persons of that description living at his death, or at the death of the survivor of the life tenants.

In *McFillin's Estate,* 235 Pa. 175 (1912), 83 A. 620, the court said, at p. 177: "The thoroughly settled rule of construction is that where a testator directs that in a certain event after the expiration of a particular interest the estate shall go to his heirs or next of kin, or to the persons who would take under the intestate laws, he is to be understood as meaning the persons who would have so taken at the time of his death, and not at the time appointed for their taking, unless a different intent is plainly manifested in his will: *Buzby's Ap-*

*peal,* 61 Pa. 111; *Stewart's Estate,* 147 Pa. 383; *Fitzpatrick's Estate,* 233 Pa. 33."

In *Tatham's Estate,* 250 Pa. 269, 95 A. 520, the court said, at p. 276: "In one of our latest cases in which the subject was considered, *Bache's Est.,* 246 Pa. 276, Mr. Justice MESTREZAT said (p. 279): 'It is settled by a long line of decisions in this State that a devise of real estate to one for life with remainder in the testator's heirs vests the remainder in those who answer such description at the time of his death unless the will affords clear and unequivocal evidence to the contrary; and it is immaterial that the life tenant is one of the class who will take the remainder: *Stewart's Est.,* 147 Pa. 383; *Buzby's Appeal,* 61 Pa. 111.' "

In *Bechtel's Estate,* supra, a trust fund was established for six children and two grandchildren until the last child had died, whereupon the will provided: "The proceeds thereof to be distributed under the intestate laws of Pennsylvania." The court, at p. 110, said: " 'where a testator gives his estate ..... to those who may be entitled under the intestate laws, these classes are to be determined as of the date of his death, even though a life estate intervenes,—the only exception to the rule being where the will contains an expression showing a clear and unequivocal intention to the contrary.' "

In the present case there are no clear and unequivocal words showing any intention that the estate should not vest in the next of kin as of the time of the death of the testator. The general rule is as stated above and the burden of showing otherwise is upon the parties who contend that such general rules do not apply.

On the contrary, the will, in clear and unequivocal language, indicates the intention of the testator that the next of kin shall take as of the time of testator's death. The language used in both paragraphs referred to supra," ...... in such proportions as my said next

of kin *would have been entitled* to receive the same under the provisions of the intestate laws of the State of Pennsylvania, had I died without having first made and published a last will and testament," leaves no doubt that they refer back to the time of testator's death. (Italics supplied).

Appellants seek to find a contrary intention in the language of paragraph Fifteen of the will which provides: '......' but should the said Thomas J. Beck die without issue him surviving then and in such case and after the decease of his surviving widow to transfer, assign, and pay over all of the bonds and stocks herein aforesaid, or the principal sum derived from the sale thereof, together with any income derived therefrom *at that time* in the hands of said Trustee, to my next of kin, etc." (Italics supplied).

Counsel for appellants argue that the italicized words "at that time" manifest an intention on the part of the testator that the next of kin who are to share in the remainder, are his next of kin at the time of the death of the life tenant. We do not agree with this contention. The words "at that time" clearly refer to "income" and express the intention of the decedent that, not only the principal but also any income in the hands of the trustee *at the time* of the death of the life tenant, shall be distributed to the decedent's next of kin.

The assignments of error are overruled and the decree of the lower court is affirmed.