## Manuel Estate

Before Klein, P. J., Bolger, Lefever, Saylor and Shoyer, JJ.

The facts appear from the following adjudication of

KLEIN, P. J., March 31, 1959.—John McLeod Manuel died on December 8, 1890, leaving a will by which, inter alia, he provided as follows:

"*ITEM*: As to all the rest, residue and remainder of my estate, real, personal and mixed whatsoever and wheresoever I give, devise and bequeath the same as follows One full undivided moiety or half part thereof I

give devise and bequeath unto my said wife Mary E. Manuel to hold to her own use for and during all the term of her natural life And from and immediately after her decease if my said son John is then living I then give devise and bequeath the said moiety of my residuary estate to him for and during all the term of his natural life But in case my said son John shall not be living at the time of the death of my said wife but shall have left issue surviving him who shall then be living in that event I give devise and bequeath the said moiety unto such issue their heirs executors and administrators forever But in case he shall not have left issue who shall then be living I give devise and bequeath the said moiety of my residuary estate to my heirs or next of kin as though I had died seized and possessed thereof intestate Or if my said son shall survive my wife and afterwards shall die leaving issue living at the time of his death then I give and devise the said moiety of my residuary estate in the same manner as I have devised the other moiety thereof given to him my said son And as to the other moiety or half part of my residuary estate I give devise and bequeath the same unto my said son John Scott Manuel to hold to him for and during all the term of his natural life And from and immediately after his decease if he shall leave issue living at the time of his death I then give devise and bequeath the said moiety of my residuary estate unto such issue absolutely But if he should die without leaving issue living but my said wife shall survive him then in that case I give devise and bequeath all the said moiety of my residuary estate unto her my said wife for and during all the term of her natural life And from and immediately after her decease (and also from and immediately after the decease of my said son in case he should die leaving no issue and my said wife should not survive him) I give devise and bequeath the said moiety of my residuary

estate unto my heirs and next of kin as if I had died seized and possessed thereof intestate."

A copy of the will, certified by counsel to be a true and correct copy, is annexed hereto.

The fund presently accounted for consists of the fund awarded to Land Title Bank and Trust Company, now Provident Tradesmens Bank and Trust Company, by adjudication of Bolger, J., dated December 21, 1942, and also the proceeds of sales of the balance of decedent's real estate, and the present account is stated to have been filed as an interim account, no account having been filed for 15 years. Before the audit of the account, however, John Scott Manuel, son of testator and surviving cestui que trust, died (on August 4, 1958), so that the trust now terminates, Mary E. Manuel, wife of testator and the other cestui que trust, being stated to have died on January 27, 1916.

The said John Scott Manuel is stated to have died without issue, and Joseph J. Gaffigan is stated to be administrator of his estate.

It appears from the statement of proposed distribution that the heirs at law and net of kin of testator at the time of his death were his wife, the said Mary E. Manuel, and his son, the said John Scott Manuel; that Mary E. Manuel died on January 27, 1916, leaving a will, a copy of which is annexed hereto, by which she left her entire estate to her son, John Scott Manuel, and that the said John Scott Manuel died on August 4, 1958, without issue, leaving a will, a copy of which is annexed hereto, by which he devised and bequeathed his entire estate to his mother, the said Mary E Manuel. The said Mary E. Manuel having predeceased the said John Scott Manuel, the later consequently died intestate with respect to his estate, and is stated to have left no kin closer than seven grandchildren of deceased uncles on his father's side.

Although the next of kin who survived the son are the same persons who would be the next of kin of testator as of the date of the son's death, they are precluded from participating in the son's estate by actual intestacy, because under the provisions of section 3(6) of the Intestate Act of April 24, 1947, P. L. 80, the estate passes to the Commonwealth of Pennsylvania if the surviving next of kin are more remotely related to decedent than first cousins.

At the audit claims were presented to the remainder interests in the estate of testator by the said seven children of the paternal uncles of the said John Scott Manuel, or their personal representatives, on the ground that the remaindermen presently entitled under the terms of the will of testator, described as "my heirs or next of kin as though I had died seized and possessed thereof intestate," should be determined as of the date of the death of John Scott Manuel, surviving cestui que trust, and not as of the date of the death of testator.

Francis B. Milligan, a devisee under the will of Jennie Manuel Magill, a niece of testator, who survived him but died in the lifetime of testator's son, takes the position that distribution should be made to the next of kin living when testator died, excluding, however, the surviving wife and son, who were life tenants under his will.

Joseph J. Gaffigan, administrator of the estate of John Scott Manuel, testator's deceased son, contends that by reason of the fact that testator died in 1890, the entire corpus passes to the estate of the son because the case falls within the general rule prevailing before passage of the Act of 1923, that testator's heirs and next of kin are to be ascertained as of the date of testator's death. He contends further that in any event the one-half moiety from which testator's wife was entitled to the income passes to the son's estate

because an intestacy occurred by reason of testator's failure to dispose of the principal of this share in remainder.

The auditing judge agrees with the primary contention of the administrator of the son's estate that nothing contained in this will manifests an intention that testator's "heirs or next of kin" are to be ascertained at any time except as of the date of his death, or that the estates of the life tenants were meant to be excluded from the distribution. The court cannot, however, agree with his secondary argument that there is a testamentary failure to dispose of the principal of this share in remainder.

Let us first direct our attention to the question as to which date controls the determination of testator's "heirs or next of kin".

The present testator died in 1890 and the law is settled beyond question in Pennsylvania that where testator died prior to the effective date of the Act of June 29, 1923, P. L. 914, 21 PS §11, leaving a will in which he directed that, following a life estate, the corpus of his estate should be divided among his heirs or next of kin under the intestate laws, such next of kin are to be determined as of the date of the death of testator, and not of the life tenant, unless a different intent is clearly manifested in the will. And even if the life tenant were one of such heirs (an apparent incongruity which was perhaps the most frequent occasion requiring judicial determination of the class), he was not, on that ground alone, precluded from participating in the distribution. This principle has become firmly imbedded in our law by authority of a host of cases: Etter's Estate, 23 Pa. 381 (1854) ; Buzby's Appeal, 61 Pa. 111 (1869) ; Stewart's Estate, 147 Pa. 383 (1892) ; McCrea Estate, 180 Pa. 81 (1897) ; Fitzpatrick's Estate, 233 Pa. 33 (1911) ; McFillin's Estate, 235 Pa. 175 (1912) ; Bache's Estate, 246 Pa.

276 (1914) ; Tatham's Estate, 250 Pa. 269 (1915) ; Murphey's Estate, 276 Pa. 498 (1923) ; Stoler's Estate, 293 Pa. 433 (1928) ; Whiteside's Estate, 302 Pa. 452 (1931) ; Bechtel's Estate, 303 Pa. 107 (1931) ; Smith's Estate, 314 Pa. 437 (1934) ; Barnard Estate, 351 Pa. 313 (1945) ; Thompson Trust, 363 Pa. 85 (1949) ; Barge's Estate, 126 Pa. Superior Ct. 332 (1937).

Our study of the cases cited by counsel for the collateral heirs in support of their position indicates that they are all inapposite and readily distinguishable from the situation confronting us in the present case. We will discuss those cases upon which they appear to place greatest reliance.

In Miller's Estate, 275 Pa. 30 (1922), testator gave his estate to his wife for life, and after her death to his daughter for life, and after the daughter's death "to all the lawful heirs of [himself] and [his] wife, Catharine Miller, to be divided among them as provided and required by the intestate laws" of Pennsylvania. He then added the following provisions:

"Provided however that the share of my sister Mary Hawthorn is never to be paid into her hands nor to any of her children, but to be paid to a trustee to be appointed by the Court who shall invest the same and pay the interest thereof to said Mary Hawthorne during her life and after her death to her children with power in said trustee to invest said share in a home for Mary Hawthorn or her children during their life time.

"Provided also that the shares or portions due to the children of my brother Abraham Miller and the share or portion coming to my brother John Miller shall never be paid to them but to a Trustee to be appointed by the Court as aforesaid who shall invest the same and pay them the interest and income thereof during life or to invest said fund or part thereof in a home or homes for the use, comfort and enjoyment of said John Miller

and children of Abraham Miller during their lifetime.

"The shares of my sister Mary Hawthorn and my brothers Abraham Miller and John Miller and their children to go to their legal heirs after their decease."

It seems clear that the detailed instructions given by testator with respect to the gifts over to his sister and two brothers, by name, indicated that he intended to preclude his daughter's estate from inclusion in the distribution because the sister and brothers could not otherwise be heirs under the intestate laws. The Supreme Court reached this conclusion and said that the will when read as a whole showed conclusively that testator "contemplated such heirs as would have inherited from his wife and himself had they never had a child,—in other words, the collateral heirs of each of them."

In Wiltbank's Estate, 47 D. & C. 209 (1943), which was decided by us, testator died in 1914, leaving the residue of his estate in trust for the equal benefit of his two daughters for life with a provision that upon the death of either "should there then survive no issue the said principal is to go to my heirs as if in respect thereof I had died intestate excluding however the son of my daughter Marian by her late husband, James H. Colfelt." We held that testator's heirs were to be determined as of the date of the death of the daughter dying without issue, rather than as of testator's death, although he died prior to 1923. In support of this conclusion, we said, at page 212:

"It seems evident that with respect to Marian's share he intended his heirs to be determined as of the date of her death, because he directed that this share should, on her death, go to his heirs, excluding his grandson, Brinton. Judge Wiltbank must have known that if his daughter Marian survived him, she and her son, Brinton, could not have been 'heirs' at the same

time. Consequently, by excluding Brinton from the class of heirs taking on Marian's death, testator must have intended the class to be ascertained as of the date of her death, because Brinton could not possibly be an heir unless his mother had first died."

In Hildebrant's Estate, 268 Pa. 132 (1920), testator provided that in the event of the death of his son without leaving issue, his estate should be divided "among my relatives under the intestate laws of Pennsylvania." The Supreme Court held that the use of the words "relatives" took the case out of the general rule. Judge Simpson said, at page 135:

"Moreover, while it is of course true that a son may be held to be a relative, even though he is called 'son' everywhere else in the will, and though popularly he never would be called a relative, yet certainly a son cannot be 'relatives'—the plural form of the expression necessarily excluding him. *McFillin's Est., 235 Pa. 175, relied upon by appellees, is not controlling. There the gift in remainder was to the 'person or persons who shall be entitled thereto as my next of kin.' The son there was a 'person' who was the 'next of kin' of that testator; while here the son cannot be 'relatives' of this one.* (Italics supplied.)

In Barnard Estate, 351 Pa. 313 (1945), our late colleague, Justice Allen M. Stearne, after setting forth the general rule applicable to this case, said, at page 316:

"The words of this will clearly indicate that the true intent of testator was to determine the heirs as of the time of *distribution*. This is not a case of the gift of a life estate with remainder to heirs, of which the life tenant was one. This testator worked out a scheme of distribution whereby his wife took a life estate in the whole trust. *At her death* one-half (or so much thereof as was appointed) passed according to her will. The

rest went to testator's heirs. The heirs, under these circumstances, are to be determined as of the date of the death of the life tenant, whose estate is thereby excluded . . .

"Any possible doubt is dispelled when it is considered that testator interpreted his own will. He wrote: 'My purpose being that my wife, *although having but a life interest in the whole of the said trust* . . .' (Italics supplied). If we were to adopt appellant's construction, testator's widow would possess an intestate share in remainder *in addition* to her life estate, which would be in contradiction of testator's express words."

Counsel makes much of the fact that in the present case testator used the following language with respect to the gift to his wife:

"All the devises and bequests hereinbefore given by me to my said wife are intended to be in lieu of her dower or other interest under the intestate laws in my estate as my widow."

Standing alone, this language might give support to the position of the collateral heirs. However, testator continues immediately with the following language, which completely refutes this contention:

"Provided however and I do hereby order and direct that all the devises bequests and legacies above given by me to her are given to her for so long a time as she remains my widow and unmarried and in case of her marriage then I revoke all the bequests legacies and devises made to her and direct that she shall have and receive only such share and interest in my said estate as she would have been entitled to had I died intestate."

The gist of this provision is that if testator's widow remarried, all the benefits under the will would be revoked and she would receive "only such share and interest in my estate as she would have been entitled to had I died intestate". It is clear beyond question that

at the moment of testator's death, when the provisions of his will became operative, his wife could not at the same time be his widow and remarried. Any remarriage must of necessity have been subsequent to the effective date of the will. If, for example, a remarriage had taken place 10 years after her husband's death, her rights in his estate would, nevertheless, have been determined under the intestate laws as of the time of his death. This confirms our conclusion that when testator referred to a distribution under the intestate laws, he intended to adhere to the general rule in effect when he executed his will, that his heirs and next of kin were to be determined as of the date of his death.

We will now examine the second contention of the administrator of the son's estate that testator failed to dispose of the principal of the one half share from which his wife received the income and that therefore an actual intestacy occurred with respect thereto. In view of our conclusion that testator's heirs are to be ascertained as of the date of his death and that consequently the entire estate passes to the son's estate, this question becomes moot. However, if we should be mistaken in this ruling, the administrator's contention would require serious consideration. We shall, therefore, dispose of it as though it were pertinent.

A study of the provisions of testator's will discloses that he provided for the following situations: (1) The death of the son in his mother's lifetime, leaving issue surviving at her death; (2) the death of the son in his mother's lifetime, without issue; and (3) the death of the son after the death of his mother, leaving issue.

Testator made no express provision for the situation which has actually occurred, viz., the death of the son *after* his mother's death, without leaving issue. This omission was, however, in our opinion, clearly an inadvertence. Testator was obviously concerned about the

ultimate disposition of this share in the event his son should die without leaving issue. Whether such death occured in the mother's lifetime or after her death appears to have been wholly immaterial to him. A reading of the will from its four corners satisfies us that testator intended to make a complete disposition of his entire estate. It seems clear to us that even in the absence of express provision for the contingency which actually happened, there is an implied gift of this share to "his heirs or next of kin" as though he "had died seized and possessed thereof intestate". See Howell's Estate, 41 D. & C. 332 (1941); Wainwright Estate, 84 D. & C. 430 (1953), affirmed 376 Pa. 161. We therefore conclude that testator did dispose of this one half share of his estate by implication and that, in any event, it must pass in the same manner and to the same persons as the other half of the estate.

To recapitulate our conclusions:

(1) Testator's "heirs or (and) next of kin" under the will are to be determined as of the date of his death;

(2) Testator's heirs or/and next of kin were his wife, Mary E. Manuel, and his son, John Scott Manuel, whose estates are accordingly entitled to the entire principal in remainder, to the exclusion of the collateral heirs;

(3) Mary E. Manuel having predeceased her son, leaving a will in which she gave her entire estate to him, his estate is therefore entitled to the whole of testator's estate in remainder; and

(4) Testator disposed of the principal of the one half share upon which his wife received the income by implication and this share passes in precisely the same manner as the other share upon which his son received the income.

And now, March 31, 1959, the account is confirmed.

*White & Williams* and *Krusen, Evans & Shaw*, for exceptants.

*Zoob, Cohan & Matz*, contra.

*Irvin Stander*, for Commonwealth.

SAYLOR, J., May 29, 1959.—The issue to be determined is whether a trust estate should be distributed to testator's heirs or next of kin as of the date of his death or of the date of the death of the life tenant. As testator died in 1890, the learned auditing judge followed the law in such cases pertaining prior to the effective date of the Act of June 29, 1923, P. L. 914. He awarded the principal to the estate of the deceased son who with his mother survived testator. The mother predeceased the son and by her will gave her entire estate to him. The son died intestate.

Counsel for collateral heirs, two grandnieces of testator who survived the life tenant, contend that testator's language showed the necessary implication that a date other than the date of his death was the one he fixed as the time for determining his heirs. Testator devised and bequeathed one moiety of his residuary estate upon the death of his wife and only son without leaving issue to survive him "to my heirs *or* next of kin as though I had died seized and possessed thereof intestate". Under the same conditions testator devised and bequeathed the other moiety "to my heirs *and* next of kin", etc.

The learned auditing judge found nothing in the will manifesting an intention that testator's "heirs or next of kin" are to be ascertained as of any time except as of the date of his death or that the estates of the widow and son, the life tenants, were meant to be excluded from the distribution.

A long line of decisions of the Supreme Court of Pennsylvania supports his conclusion. In the case of estates created prior to December 31, 1923, the effec-

tive date of the Act of June 29, 1923, P. L. 914, the general rule of construction is that a devise or bequest to heirs or next of kin of testator will be construed as referring to those who are such at the time of testator's decease, unless a different intent is plainly manifest in the will: Wilson Estate, 369 Pa. 583 (1952); Thompson Trust, 363 Pa. 85 (1949).

This rule "is never varied unless from the four corners of the will a different intention clearly appears": Fitzpatrick's Estate, 233 Pa. 33, 35 (1911). An intention to vary the rule "must necessarily be shown by the unmistakable meaning derived from the language used": Stoler's Estate, 293 Pa. 433, 436 (1928).

The cases wherein the courts have not followed the rule involve language indicating testator's intention that his heirs should be those entitled to take at the time of the life tenant's death: Wiltbank's Estate, 47 D. & C. 209 (1943); Hildebrant's Estate, 268 Pa. 132 (1920); Miller's Estate, 275 Pa. 30 (1922); and Barnard Estate, 351 Pa. 313 (1945). The auditing judge properly found that such decisions were not apposite to the matter before him.

Nor do other cases where the rule was departed from give any support to exceptant's position. In Everitt's Estate (No. 1), 195 Pa. 450 (1900); McKee's Estate, 198 Pa. 255 (1901); Dailey's Estate, 268 Pa. 379 (1920); Leech's Estate, 274 Pa. 369 (1922); and Laughlin's Estate, 336 Pa. 529 (1929), the language of testators included phrases such as "among all the heirs" and "any surviving children" as well as the use of "then" as an adverb of time, language altogether different than that in the will now under consideration.

Those cases where the courts found exceptions to the general rule because the necessary contrary intention was based on the application of the "pay and divide"

rule are also of no help to exceptants. That rule is applied only where the language of the will directs that property be "divided" or contains a "direction to pay": Groninger's Estate, 268 Pa. 184, 190 (1920); in the instant case there is no direction to divide, nor to pay and divide.

Exceptants have not offered any decisions or made any convincing argument for taking the present case out of the general rule. Whatever the original purpose of that rule, and however the application in later cases may effect results at variance with such purpose, it was the law of Pennsylvania when testator died in 1890. It does not lie in the power of the courts to effect in such case what the legislature in passing the Act of 1923 did to change the law for estates thereafter created.

The "consistent 'contingent' theme of the will" referred to by exceptants' counsel in their brief has no bearing on the application of the rule. The case before us falls, in our opinion, in the great category of cases where the rule applies. No amount of ingenious argument and no variety of readings of testator's words can convince us that they evidence an intent, *plainly manifest*, to vary this rule.

Lastly, the fact that in the present instance the effect of the award by the auditing judge is to place the trust principal in the hands of the administrator of the estate of the deceased life tenant, which in turn will result in the award passing to the Commonwealth in the absence of heirs of the intestate son, is no reason for a departure from the rule. Nor does the fact that testator's will provides only a life estate for the son afford a reason for denying his right to a share as an heir or next of kin: Smith's Estate, 314 Pa. 437 (1934); Whiteside's Estate, 302 Pa. 452 (1931); and Stoler's Estate, 293 Pa. 433, 437 (1928).

Accordingly, the exceptions are dismissed and the adjudication is confirmed absolutely.