## Marshall's Estate.  Whitney's Appeal.  Sproul's Appeal.

*Will—Conversion—Blending of real and personal estate.*

When a testator by his will blends his real and personal estate so as to show that he intends to create a common fund out of the two and to bequeath the fund as money, a conversion of the real estate will be implied. The provisions of the will in question in this case, held to effect a conversion in this manner.

*Trusts—Active trust—Discretion of trustees.*

A testator bequeathed a fund to his executors, to hold in trust for his children, " making them all equal at twenty-one years of age," with power in the executors to give or withhold the corpus, as they thought for the best interests of the children; with bequests over, in the contingency of the death of any of the children without issue.  *Held:*

The trust did not determine upon the arrival of the children at full age, by reason of the direction to make them equal at that age, which might well apply to income alone, but still continued as an active trust, the trustees not having exercised their discretionary power to end it: Marshall's Est., 138 Pa. 260, followed and applied.

Argued Nov. 6, 1891.   Appeals Nos. 304, 305, Oct. T., 1891, by G. I. Whitney, assignee, and F. P. Sproul, guardian, from decree, O. C. Allegheny Co., April T., 1890, No. 75, dismissing exceptions to adjudication.   Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS and MITCHELL, JJ.

On April 7, 1890, the third account of Mark W. Marshall, Thomas M. Marshall and Matilda Marshall, trustees under the will of James Marshall, deceased, exhibiting a cash balance of $36,865.65, made up in part of royalties received under oil leases made by the accountants of lands belonging to the estate of the testator, was confirmed nisi.   The account having been audited, HAWKINS, P. J., on July 10, 1891, filed the following adjudication :

James Marshall died in September, 1869, leaving a will dated May 23, 1867, by which he appointed his wife Matilda, his son, James, his son-in-law, Mark W. Watson, and his

brother, Thomas M. Marshall, executors and trustees, and made the following, among other provisions. The first paragraph of the will made the appointment of the executors and trustees. The second and third paragraphs were as follows :

" 2. I bequeath to my executors the sum of six thousand dollars for the use and benefit of my niece, Jane P. Rainbow, to be paid to her at their discretion, or by investing it for her benefit.

" 3. I devise and bequeath to my wife Matilda, the house we now occupy as a home, during her life, and four thousand dollars per year, together with furniture, and the necessary appendages for her support and that of her minor child Anna Frances ; this is to be in lieu of my wife's dower.

" 4. I bequeath to my executors all the balance of my estate, real, personal and mixed, to have and to hold the same in trust for the use and benefit of my children, viz., Harriet Watson, James, Julia and Anna Frances, making them all equal at twenty-one years of age, share and share alike ; and should any of them die without lawful issue, their interest shall be equally distributed to the survivors or the heirs of my deceased children, by investing it for their benefit, or paying to them the proceeds ; as I wish them, the executors, to be invested with full power to give or withhold as they think best' for the interest of any and all of my children ; and for the purpose of carrying out this, my purpose, I hereby authorize my executors to purchase and sell real estate at public or private sale, as they deem for the best interests of my children, and to hold it in trust for them, or give it to them as they regard their best interest."

The body of the will, except the clause " to the heirs of my deceased children," was in testator's handwriting. Harriet Watson was of age when the will was made; James Marshall, Jr., attained his majority before his father died; Julia, October 18, 1869, and Anna Frances, August 8, 1886.

The executors and trustees qualified. James Marshall, Jr., at once assumed the duties of acting executor and trustee, and so continued until April 16, 1883, when he became insolvent and made a voluntary assignment largely indebted, through devastavit, to the estate ; and thereupon his co-trustees assumed the duties and have continued in their performance

since. James Marshall, Jr., was discharged as executor and trustee.

Since the death of Mr. Marshall, numerous sales and conveyances have been made under the power contained in his will; and among these was a sale made by the surviving trustees in 1889, in which the continued existence of their power was questioned, and was affirmed by this and the Supreme Court: Marshall's Est., 138 Pa. 260. In 1884, the surviving trustees made certain so-called oil leases of land which theretofore had not been developed, and from which these trustees have received in bonus and royalty $218,381.92.

Unequal amounts have been paid the cestuis que trust in distribution, Anna Frances having received less than any of the others.

The questions presented are: 1. What is the duration of the trust under this will? 2. Shall the proceeds of the oil leases be treated as corpus or income? 3. What were the relative rights of the cestuis que trust, before and after attaining majority, in respect of the income of the trust estate?

DECISION.

1. That this will created a valid, active trust seems clear. There are sufficient words used; a definite subject and ascertained subjects: Cruwys v. Colman, 9 Ves. 322; and it is not inconsistent with public policy: Earp's Ap., 75 Pa. 119; Wilkinson v. Buist, 124 Pa. 253; Lewis on Perpetuities, 585. This much is conceded.

2. The main controversy between the parties turns on the duration of the trust.

The dominant intent apparent on the face of the will is to create a trust for the " use and benefit" of all testator's children in the residuary estate, during their lives, with discretionary power in the trustees to "give or withhold" from any such " children" a share in the corpus, and thus end the trust sooner. The operative word used in creating, must obviously be the chief guide in ascertaining the purpose and scope of the trust, and give color to the interpretation of the following provision relating to it.

These words are: "I bequeath to my executors all the balance of my estate, real, personal and mixed, to have and to hold the same in trust for the use and benefit of my children,

viz., Harriet Watson, James, Julia and Frances." As "children" are the only objects mentioned here, the presumption is that the trust was raised for their "use and benefit" alone, and that its duration was intended to be limited by their lives. The following portion of the paragraph relating to the trust, gave the trustees discretionary power to end the trust in respect of any of such "children" and vest in them a share in the corpus in the meantime; but it did not change or modify it in any other respect.

It was suggested at the argument that this construction leaves out of consideration the clause "making them all equal at twenty-one years of age," which follows that creating the trust. But it does not. That clause is at best ambiguous. If the paragraph relating to the trust had ended here, this clause would have been more difficult of construction than when read in connection with the following clauses. What in that case would have been the scope and duration of the trust? As Mrs. Watson had passed her twenty-first year when the will was made, and James Marshall, Jr., when it became operative by the death of his father, would the trust have been active as to them? Why should the name of Mrs. Watson have been inserted at all amongst the cestuis que trust, if the trust was not intended to be operative as to her? If active as to her, what was its intended duration? "Making them all equal at twenty-one years of age," does not necessarily mean that the trust shall end when the youngest child shall attain twenty-one years of age. It cannot be made to mean this without the insertion of additional words; but does the context require this? It is a settled principle of construction that words can be supplied only in cases where it is necessary to give effect to the most unquestionable purpose of the testator: Varner's Ap., 87 Pa. 422.

Nor does this clause necessarily refer to corpus. Read in connection with the foregoing and following clauses, it may be made to harmonize without inserting additional words by treating it as relating to the equalization of income, or the exercise of the discretionary power which was vested in the trustees to "give or withhold" shares in the corpus of the trust to or from the cestuis que trust. In no other ways can it be made consistent or harmonious with them. If inconsistent, it must yield to

the clauses expressing the testator's general and final intent to create a trust for "children" during life, with discretionary power in the trustees to end it sooner and vest a share in the corpus in any of such "children." As these "children" are still living, and the trustees have not seen fit to exercise their discretionary power to end the trust, it follows that the trust continues. The decision in Marshall's Est., 138 Pa. 260, arising out of this same will, leads to the same conclusion; for if, as was there held, the power of sale vested in these trustees be still in existence, the power "to give or. withhold" the corpus of the trust is still in existence. The trustees were invested with the power of sale for the express "purpose of carrying out" the trust or to withhold.

2. Leaving out of view the clause "making them all equal at twenty-one years of age," there is nothing to show that testator intended to discriminate as between the children, in respect of the income of his residuary estate. As already suggested, that clause is ambiguous; but there is nothing in it absolutely inconsistent with the theory of equality as between all of the children. "Making them all equal at twenty-one years of age" may, and probably did mean that income accumulated during minority should be paid over at majority. It could not have been legally accumulated beyond that period; and that construction must be adopted which makes the will operate, if possible, in accordance with the civil as well as natural law.

3. The proceeds of the oil leases are clearly part of the corpus, and personalty. The trustees had no power to make these leases, except by virtue of the authority given them in the will to sell real estate: Stoughton's Ap., 88 Pa. 198. And the exercise of this authority necessarily worked a conversion.* The will expressly vested in them discretionary power to hold such "proceeds" in trust for the "children," or give it to them, as they regard their best interest.

And now, to wit, July 10, 1891, this matter came on to be heard, upon account of executors and trustees and testimony taken, and was argued by counsel, and upon consideration thereof it is adjudged and decreed: (1) [That by his last will,

---

* See Lazarus's Est., 145 Pa. 1.

James Marshall vested in Mrs. Matilda Marshall, Thos. M. Marshall, M. W. Watson and James Marshall, Jr., his residuary estate in trust for the use and benefit of his children Harriet Watson, Julia (now Mrs. Talbot), James and Anna Frances, during life, with discretionary power in said trustees to give or withhold to or from any of said children a share in the corpus of said residue in the meantime.] [1] (2) That, under said trust, said children are entitled to the residue in equal shares, the accumulated income of those in minority to be paid on their attaining majority, and those having attained majority, as it accrues. (3) That the proceeds of oil leases made by said trustees by virtue of the will, shall be treated as part of the corpus of the residue, and personalty.

Exceptions were filed to the decree by George I. Whitney, assignee of James Marshall, Jr., and by Frank P. Sproul, guardian *ad litem* of Julia and Amy Watson, minor children of Harriet Watson, and Richard Talbot, minor child of Julia Talbot, and attorney of other children of Mrs. Watson, and "trustee for the contingent interests, not *in esse*, under the provisions of the will of James Marshall, deceased." The exceptions were dismissed. Exceptants appealed.

*Errors assigned*, by George I. Whitney, assignee, the appellant in No. 304, (1) in making that part of the decree embraced in brackets; (2) in substantially holding that the equalization provided for in the will refers only to the income of the estate; (3) in not holding that under the will of testator, each of his children took a vested interest in fee in the lands of the decedent; (4) in not holding that the trust created by the will terminated when the youngest child attained the age of twenty-one years.

*Errors assigned*, by Frank P. Sproul, guardian, etc., appellant in No. 305, (1) in making that part of the decree embraced in brackets; (2) in not holding that each of the testator's children "took an estate for life, with a vested remainder in fee to the children of said children, with a limitation over to the surviving children of the decedent, James Marshall, on the death of either child without lawful issue."

*Thomas D. Chantler*, *Robert Arthurs* with him, for Whitney, appellant in No. 304, cited: Horwitz v. Norris, 60 Pa. 261;

Letchworth's Ap., 30 Pa. 175; Coggins' Ap., 124 Pa. 29; King v. Frick, 135 Pa. 575; Mickley's Ap., 92 Pa. 514; Bland v. Williams, 3 Myl. & K. 411; Cooper v. Cooper, 7 Jur. N. S. 178; Kerlin v. Bull, 1 Dall. 189; McClure's Ap., 72 Pa. 414; Reed's Ap., 118 Pa. 215; Hunt's Ap., 105 Pa. 141; Edwards's Ap., 47 Pa. 144; Sheridan v. Sheridan, 136 Pa. 14; Page's Est., 75 Pa. 87; Perot's Ap., 102 Pa. 256.

*F. P. Sproul*, for appellant in No. 305, p. p., cited: Horwitz v. Norris, 60 Pa. 261; Wigram on Wills, XI; Hitchcock v. Hitchcock, 35 Pa. 393; Fox's Ap., 99 Pa. 382; Gimblett v. Purton, L. R. 12 Eq. 427; Hill v. Chapman, 1 Ves. 405.

*D. T. Watson* and *J. H. White*, for the appellees.

PER CURIAM, January 4, 1892.

These appeals involve the construction of the fourth paragraph of the will of James Marshall, deceased. Said paragraph is as follows:

"I bequeath to my executors all the balance of my estate, real, personal and mixed, to have and to hold the same in trust for the use and benefit of my children, viz., Harriet Watson, James, Julia, and Anna Frances, making them all equal at twenty-one years of age, share and share alike; and should any of them die without lawful issue, their interests shall be equally distributed to the survivors, or the heirs of my deceased children, by investing it for their benefit, or paying to them the proceeds; as I wish them, the executors, to be invested with full power to give or withhold, as they think best for the interest of any or all of my children; and, for the purpose of carrying out this my purpose, I hereby authorize my executors to purchase and sell real estate, at public or private sale, as they deem for the best interests of my children, and to hold it in trust for them, or give it to them, as they regard their best interest."

The appellant, George I. Whitney, is the assignee of the interest of James Marshall, Jr., in the estate of his father, James Marshall. The said James Marshall, Jr., was one of the executors and trustees named in the will, and was for some years the active executor. The result was a *devastavit*, by which the estate lost heavily and the interest of the said executor therein was wholly or for the greater part absorbed. Hav-

ing become insolvent, he made an assignment for the benefit of
creditors to the appellant Whitney. The point which the lat-
ter makes is that, under the will of James Marshall, deceased,
" each of his children took a vested interest in fee in the lands
of the decedent." See third assignment of error in Whitney's
Appeal. The result of this contention, if sustained by the
court, would be that a portion of the real estate would go to
pay the creditors of the defaulting executor and trustee, not-
withstanding his *devastavit*.

We will dispose of this question first. Its solution depends
upon the fact whether, under the will, there was a conver-
sion of the real estate. Upon this point we are not in doubt.
It was held in Hunt's Ap., 105 Pa. 128, and in other cases
there cited, that a conversion of real estate will be implied
when there has been a blending of the real and personal estate
so as to show that the testator intended to create a common
fund out of both real and personal estate, and to bequeath the
fund as money. That there is such a blending of the real and
personal estate in the will of James Marshall, and that he in-
tended the whole to be distributed as money, is so obvious that
we may well be spared a further discussion of this branch of
the case. We are of opinion there was a conversion.

Other questions arise upon the face of this clause of the will.
That it creates an active trust is apparent. How long does
this trust continue? This is the second, and the only remain-
ing question of importance in the case. The appellants con-
tend that the trust determined on the arrival of the youngest
child of James Marshall at twenty-one years of age. The
learned judge of the orphans' court held otherwise, and in this
we think he was right. While the clause of the will is by no
means clear and is very inartificially drawn, we find nothing
in it to limit the trust to the majority of the youngest child.
The controlling thought in the will is to create a trust for all
his children of the residuary estate during their respective lives,
with the power on the part of the executors to end the trust
as to one or more of them, and for this purpose they are au-
thorized " to hold it in trust for them, or give it to them, as
they regard their best interest." Nor does the direction that
the children are all to be made " equal at twenty-one years of
age, share and share alike," imply that the trust is to end at

that time. This expression may well apply to the income, if the corpus remains in trust, without doing violence to any other portion of the will. As the children are all living, and the trustees have not exercised their discretionary powers and ended the trust, we are compelled to hold that it still continues. The same clause in this will was before this court in Marshall's Est., 138 Pa. 260, and it was held that the power of sale was discretionary, and without limitation as to the times within which such sales should be made. It follows that, if the power of sale is still in existence, the power to " give or withhold " the corpus of the estate is also in existence.

What has been said covers the assignments of error in each case. It follows that the fund for distribution should be held by the trustees under the trusts in the will.

The decree is affirmed, and each appeal dismissed at the costs of the respective appellants.                    C.