# Bailey's Estate (No. 1).

*Will—Power of appointment—Limitation on power—Widow—
Trusts and trustees—Substituted trustee—Family settlement—
Sale — Orphans' court sale—Price Act — Jurisdiction of orphans'
court—Real estate—Conversion.*

1. In determining whether a power of appointment is validly
exercised, consideration must be directed to the intention of the
donor, the purpose for which the power was created, and whether
its exercise expressly or impliedly violates the conditions laid
down by the donor.

2. Where a testator gives to his widow his estate in trust, blend-
ing real and personal estate, and empowers her to divide her estate
among their "joint issue" in such manner and in such proportion
as she may think proper and advisable, the appointment to be as
"effective as if made by" himself, the will of the widow is supreme
within the class designated. If she designates all the children of
herself and husband, she is well within the power.

3. In such case no agreement made between herself and chil-
dren, interfering with the appointing power confided by the hus-
band, can bind her hands contrary to the provision of her husband's
will.

4. Where the widow resigns the trust, and a trust company is
appointed by the orphans' court in her place, and subsequently she
dies leaving a will by which she exercises the power of appointment
within the limitations of her husband's will and in accordance with
a family settlement, and designates the trust company as her
trustee, and provides for the division of the estate in cash, the legal
title of the real estate passes to the trust company, and such com-
pany has standing to petition the orphans' court for leave to sell
under the Revised Price Act, so as to divide and distribute the
estate.

5. By the terms of the widow's will, there is a conversion of the
realty.

Argued October 11, 1922. Appeal, No. 139, Oct. T.,
1922, by Fidelity Title & Trust Co., from decree of O. C.
Allegheny Co., Feb. T., 1922, No. 375, dismissing petition
for leave to sell real estate, in estate of Henry J. Bailey,
deceased. Before FRAZER, WALLING, KEPHART, SADLER
and SCHAFFER, JJ. Reversed.

Petition to sell real estate under Revised Price Act.

The opinion of the Supreme Court states the facts.

Petition dismissed in opinion by TRIMBLE, J., MILLER, P. J., dissenting. Fidelity Title & Trust Co., trustee, and Gertrude Bailey Tener, a legatee, appealed.

*Error assigned,* inter alia, was decree, quoting it.

*A. Leo Weil,* of *Weil, Christy & Weil,* for appellant.— The will of Catherine G. Bailey exercising the power conferred upon her by the will of Henry J. Bailey, and complying with the family agreement, worked an equitable conversion of the estate, and a trust for the purpose of distribution was thereby created: Beatty v. Byers, 18 Pa. 105; Battenfield v. Kline, 228 Pa. 91; Severn's Est., 211 Pa. 65; Neel's Est., 252 Pa. 394.

Both the will and the agreement expressly in terms direct that distribution be made in cash.

The Fidelity Title & Trust Company is trustee to make distribution.

There being no express power in the trustee to make sale, the orphans' court has jurisdiction over the trustee and power to authorize the sale under the Revised Price Act of 1917, P. L. 388, sections 1 and 2: McNeile's Est., 217 Pa. 179.

*Francis R. Harbison,* with him *Watson & Freeman,* for appellee.—There is no grant of title by Mrs. Bailey to the trustee, either express or implied: Cook v. Petty, 108 Pa. 138.

The orphans' court will not take jurisdiction under the Revised Price Act to sell a disputed question of title: Hower's App., 55 Pa. 337; Bridesburg Land Co.'s Petition, 7 Phila. 436.

The power of appointment vested in Catherine G. Bailey was not legally executed: Wistar v. Scott, 105 Pa. 200.

Catherine G. Bailey's will did not work an equitable conversion of her husband's estate: Severn's Est., 211 Pa. 65; Page's Est., 75 Pa. 87.

OPINION BY MR. JUSTICE KEPHART, January 3, 1923:

In determining whether the orphans' court has jurisdiction to order the sale of real estate on the petition of the trustee named in the will, it is necessary to ascertain whether the petitioner is in fact a trustee of the property. The trustee, acting under two wills and an article of agreement, petitioned the court to authorize a sale of real estate to effectuate the purposes of the wills. The court below held the sale was a matter between living persons, denied its jurisdiction, and dismissed the petition.

Henry J. Bailey died the owner of considerable property. He devised it to his widow as trustee to hold during her life, the income during widowhood to be hers absolutely, and she at her death to appoint by her will the division of the estate among their "joint issue." After assuming her duties as trustee, she made improvident loans to various members of her family. These were likely to embarrass the estate, and the widow concluded to resign the trusteeship; the court appointed the Fidelity Title & Trust Company, petitioner, as trustee to succeed her.

Exceptions were filed to the widow's account; the children, to relieve the situation, met in an effort to adjust all difficulties, when a family agreement or settlement was concluded. It was participated in by all of the children of Henry J. Bailey, with one grandchild representing the interest of its deceased parent. By the agreement an ultimate distribution of the estate was arranged to produce equality among the children. No other grandchildren took part in the settlement or were considered; it was not necessary they should appear. The persons executing the agreement did so as all "the joint issue" of Henry J. Bailey and wife; petitioner was

thus made trustee to carry out the purposes of the agreement.

The widow later made a will. It followed substantially the language of the agreement, and no doubt was intended to carry out the latter's terms. The trust company was again named trustee, and also executor. After the widow's death the trustee, by article, sold a piece of ground for $75,000, conditioned on the approval of the sale by the orphans' court. This was denied, as stated above.

Before discussing the various provisions in the will, we may say, unless the title under which the petitioner moved was testamentary, the orphans' court was correct in holding it did not have jurisdiction over the subject-matter of the petition. There can be no question but that the source of title was the father's (Henry J. Bailey's) will. Whether the appointing power thereunder, properly exercised, was a continuation of that title or trust, or the creation of a new relation predicated on the power, is not material, if the property was within the control of either. This power was very broad, and, lawfully exercised, may be used to carry out Henry J. Bailey's intention under a new trust. Hence we must consider what could be and what was done by the widow under authority of her husband's will. It reads: "I hereby give her [the widow] full power and authority to divide my estate by last will and testament between and among our joint issue in such manner and in such proportions as she may think proper and advisable, and her said last will and testament dividing my estate between our joint issue shall be as binding and effective as if made by myself." This direction restricts the widow's designation to a class,—"joint issue,"—but it must be evident that within the class the widow's will is supreme. In passing on a similar question, in Lewis's Estate, 269 Pa. 379, where the appointment was (p. 381) "to such person or persons, being my lineal descendants, as my said deceased daughter may have appointed by her will,

in such shares and amounts as she may choose and direct by such will," we said (p. 381) : "In determining whether a power of appointment is validly exercised, consideration must first be directed to the intention of the donor as found in the instrument creating the power. The applicability of the rules of law, relating to the exercise of the power of appointment, is not to be measured solely by the particular class in which the power may be conveniently placed or wherein it may operate, but from a consideration of the intent and purpose for which the power was created, and whether its exercise expressly or impliedly violates the conditions laid down by the donor."

Here testator's primary intention was to confine the devolution of his estate to his "joint issue," but in doing so he imposed a certain confidence, trust and discretion in his widow. As said in Lewis's Estate, supra, the person or persons and amounts were left to the donee's discretion so long as the benefits were confined within the selected class. So that, in ascertaining testator's intention, we find the "joint issue" under the power were such of their children as the widow might designate; the appointment was to be as "effective as if made by" himself. Having designated all the children of her husband and herself, she was well within the power. The widow might have ignored the agreement; she alone was to appoint those who should get her husband's property; her decision was to speak through a "will," and be effective at her death. We need not determine, under the facts, what might have happened had no will been made. No agreement, interfering with the appointing power confided by the husband, could bind her hands contrary to the provisions of her husband's will.

The widow having appointed within the class designated, the exercise was lawful. The petitioner is named as trustee and executor, but it is urged the legal title is not in the trustee, inferentially or expressly, so that it may invoke the benefit of the Price Act. The Fidelity

Company was acting trustee under the will of Henry J. Bailey, at the widow's death. Her will disposed of an estate estimated to be worth $700,000; the agreement would be evidence to fix this value, and it could be reached only by careful conservation and administration. It was divided into seven parts, each of her seven children to receive $100,000. If there was a residue after these bequests, it was provided for; if the estate was worth less than $700,000, there must be a pro rata shrinkage in all the principal legacies to the seven children. The estate is made up in part of notes aggregating not less than $425,000, owed by five children named as beneficiaries; the balance was made up of stocks, bonds, notes and other indebtedness of the children or others, with some real estate. Throughout the will there is such blending of real and personal estates there can be no doubt the estate should pass as personalty. In distributing to the seven children, the estate is treated as money in a common fund; their own obligations are made credits in liquidation of their distributive shares. If the estate should be of greater value than $700,000, specific bequests to others were made in money; if the estate was less than $700,000, her will called for a proportional reduction and payment by those whose notes exceeded the reduced value, so that each of the seven shares might be equal in amount. No real estate was mentioned, except, as a bare possibility, the country home, located at Coraopolis, Allegheny County, which might be saved after the $700,000 value had been reached; but it was only in event this figure was attained that it was treated as real estate. With the evident thought that the value equaled or was less than $700,000, it was put in the general scheme to be reduced to cash if necessary. (This is not the land now offered for sale.) The directions were to pay, or "shall be paid,"—terms used in connection with money distribution, unless the will clearly directs otherwise.

It is not necessary to review the law on conversion of land into money. This has been very lately considered by this court: Davidson, Exrx., v. Bright, 267 Pa. 580, 583, 584, 585; Reel's Est., 272 Pa. 135; Schoen's Est., 274 Pa. 28. Here there is a conversion; hence there must be a sale of the real estate. The suggestion the legacies are a charge on the land passes out of the case when conversion is established.

The fee during the widow's life may be said to be vested in contingent remainder to the appointees under the will of the widow. The authority to sell given to the widow carried with it the power to convey the legal estate; it was continued to the substituted trustee. There was no express direction to sell, nor did the widow's will in words convey the legal title to the trustee, but it happens, unavoidably, from the express disposition made of the property; this could not be done without sale (Keim's Est., 201 Pa. 609, 611) by the petitioner as trustee, whose office was to accomplish the appointor's purposes. The trusteeship is made clearer by the specific directions as to the ultimate disposal of the estate in excess of $700,000. The implied direction is just as complete as though expressly written; a trust for sale gives the trustee legal title: Hill on Trustees, *231. The imposition of a trust by appointment, with a delegation of discretionary authority in the trustee to further appoint, does not violate the donor's intention: Lewis's Est., supra, 383. Much less would it violate that intention where the trustee is merely the effectual means to execute that intention. The widow could lawfully pass the legal title to the trustee in the exercise of her appointing power. Had she not done so under her will as here considered, the orphans' court could have supplied the necessary deficiency. Act of February 24, 1834, P. L. 70, section 12. That the executor had power to make the sale without an order of court (Severns's Est. (No. 1), 211 Pa. 65, 67), would not prohibit the orphans' court from making the order under the Price

Act. The order may not add to or detract from the validity of a title conveyed under such circumstances, but it does give an opportunity to present questions in relation thereto. The court below should have made the decree.

The record is remitted with directions to order the sale of the property in accordance with the prayer of the petition.

Decree reversed, with procedendo.