## Dieterich's Estate

The facts appear from the adjudication and readjudication of

SINKLER, J., Auditing Judge.—Charles P. Dieterich died December 5, 1879, and the trust arises under the following provision of his will:

"Item III. All the rest, residue and remainder of my Estate real and personal I give, devise and bequeath unto my Executor hereinafter named and The Provident Life and Trust Company of Philadelphia in Trust and to pay over the net income thereof in equal shares unto my sisters, Amelia N. Montgomery and Clara N. Hidden and my brother Daniel P. Dieterich during their respective lives and the life of the survivors or survivor of them, and upon the death of said survivor of my brother and sisters in Trust to pay divide and distribute the principal of my said Residuary Estate to and among the persons entitled to the same under the Intestate Laws of this Commonwealth."

The trust terminated by reason of the death of Clara N. Hidden, the last surviving life tenant, on February 10, 1931, and the corpus of the estate is now distributable.

The following clause is to be construed:

"Upon the death of the said survivor of my brother and sisters, in trust to pay, divide and distribute the principal of my said residuary estate to and among the persons entitled to the same under the intestate laws of this Commonwealth."

Upon the death of the survivor of the life tenants is the corpus of the estate to be distributed to the next of kin of the testator to be determined as of the date of his death or as of the date of the death of the survivor of the life tenants?

The testator died December 5, 1879, unmarried and without issue. The residue of his estate is given in trust, with a life interest in his brother and his two half-sisters, and the provision just quoted as to the division of the corpus upon the death of the survivor. By reason of the death of the last surviving life tenant the final account of the trustees has been filed and comes before us for audit.

As has been stated above, the sole question is whether those entitled to take are to be ascertained as of the date of the death of the testator or as of the date of the death of the surviving life tenant.

If it is concluded that the former contention is correct, then it is asked that the fund be awarded to the executor or legal representatives of the estate of Clarissa A. Popham, the mother of the testator, who died December 24, 1891, and, therefore, survived him.

This question has been the subject of an adjudication filed by me in the Estate of Elizabeth Hover. Exceptions filed to my adjudication were dismissed in an opinion by Gest, J., reported in 14 D. & C. 590. In my adjudication, as well as in Judge Gest's opinion, there will be found a discussion of the law upon this subject and numerous cases cited.

Prior to the Act of June 29, 1923, P. L. 914, Judge Gest holds "the next of kin to whom the remainder estate is directed to be distributed should be ascertained as of the death of the testator and not as of the death of the life tenant, which is the period of distribution. This is a canon of testamentary construction, which applies unless the testator expressly or by necessary implication clearly designates the contrary intention." An intent must be manifest and unequivocal that the date of the life tenant's death is to be taken as the time for ascertaining the next of kin. Otherwise the general rule will prevail.

Among the decisions cited in my adjudication is Whiteside's Estate, 13 D. & C. 220. After Judge Gest's opinion in Hover's Estate, supra, had been filed, the Supreme Court affirmed the decision of our court in Whiteside's Estate, 302 Pa. 452. The decision in the opinion of the Supreme Court holds that "it is immaterial that the life tenant is one of the class who will take the remainder," citing Bache's Estate, 246 Pa. 276, and then continues: "Should the matter admit a doubt, the doubt must be resolved in favor of the heir or next of kin, following the familiar rule that only express words or necessary implication are effective to disinherit an heir."

It is argued that the testator made no provision in his will giving the corpus to his mother, and that the only life estate he gave her was the use of his real estate for occupancy by her and his two half-sisters, together with the direction in his will that the executor retain a fund sufficient to pay the taxes, water rent and repairs.

The testator, it is further argued, showed by the provisions of his will that he did not desire any part of the principal of his estate to pass to any who was not of his own blood. I assume that counsel in making this contention means that the testator did not intend that his estate should pass to his mother, thus per-

mitting her to give it by her will to others who were not of his own blood. But, as Judge Gest says in Hover's Estate, supra: "Such considerations should not influence our legal judgment," citing Bentley's Estate, No. 1, 30 Dist. R. 67, even though "the result may be to divert the estate to persons not belonging to the family of the testator," which is not the case in the instance before us.

In Hover's Estate, supra, provisions made in the codicil to the will convince me that the case fell within the exception and not within the general rule. There is nothing to be found in the will, nor in any codicil thereto, nor in any circumstance existing which manifest an intention, clear and unequivocal, that the present estate should be distributed otherwise than according to the general rule applicable to such cases.

The corpus of the trust estate is, therefore, distributable to those entitled under the will of Clarissa A. Popham, mother of the testator.

Clarissa A. Popham died December 24, 1891, leaving a will, a copy of which is hereto annexed. All of the executors named in her will are now deceased. Her will gives the residue of her estate in trust for her four children, and upon their deaths the corpus is given to her grandson, Charles P. Hidden. It appears by an affidavit of Charles P. Hidden, hereto annexed, that all of the life tenants under the will of Clarissa A. Popham are now deceased, and, therefore, her estate passes to her grandson, Charles P. Hidden, absolutely, and an award will accordingly be made to him.

### Readjudication

The first account of The Provident Trust Company, which came before me for audit May 7, 1931, contains items of debt in the principal account of awards in specified amounts by adjudications upon the account of the executor of this estate and upon the account of the administrator c. t. a. respectively. The sole question presented for determination by the petition for distribution was whether the remainders provided by the residuary clause were vested or contingent. My adjudication is based upon the assumption that the entire balance for distribution was personalty. The exceptions filed thereto do not raise any question upon the nature of the fund for distribution, but at the argument upon the exceptions before the court in banc on October 21, 1931, it was contended that a part of the fund for distribution was composed of the proceeds of the sale of real estate owned by the testator at the time of his death. In consequence of this contention, a decree was entered by Gest, J., that certain questions having been introduced which were not the subject of any exceptions to my adjudication and had not been presented upon the audit of the trustee's account, the adjudication was recommitted to me, at my request, for further consideration upon such questions as might be produced at the further audit.

Pursuant to this decree, a further hearing was had on December 10, 1931, when certain evidence was offered, a stipulation of counsel was filed concerning the sale of certain real estate, argument was had upon the questions that had not been raised at the audit, and briefs of argument filed.

By the stipulation of counsel it is agreed that the balance for distribution shown by the account before me is composed in part of the proceeds of sale of (a) No. 2001 Green Street, and (b) certain other real estate owned by testator at the time of his death. These proceeds, it is contended by the exceptants, should be awarded to the grandchildren of testator's two half-sisters, on the ground that under the intestate laws in effect at the time of testator's death (Act of April 8, 1833, P. L. 315, Secs. 3 and 4) his surviving parent (mother) enjoyed the real estate of which he died seized only for life, with remainder to his heirs at law.

Item two of the will is as follows:

"I direct my executor to retain in his hands sufficient of my estate to provide an annual fund to pay the taxes water rent and repairs of my house No. 2001 Green Street in the City of Philadelphia, and I give and devise the use and occupancy thereof to my mother Clarissa A. Popham and my two sisters Amelia N. Montgomery and Clara N. Hidden during the life time of her my said mother and for the space of three years after her death to my said two sisters above named and the survivor of them free and clear of all costs and charges which I hereby direct my executor to pay. And if at the death of my said mother my sisters be then both deceased I direct the said house to be sold and the proceeds thereof together with the principle and interest of the fund reserved to pay taxes &c to be added to my residuary estate as hereinafter provided."

The testator's two half-sisters survived him. It is now contended that the direction to sell is applicable only if the two sisters did not survive testator's mother, and that for this reason there is no equitable conversion of the premises in question. On the contrary, it is argued that the will contains an implied positive direction to sell the premises in the event the sisters should survive the mother, that there is an equitable conversion, and that the proceeds of sale are therefore distributable as personalty.

Neither of these two contention is, in my opinion, precisely correct. The testator intended that "my house 2001 Green Street" should continue as a family home for his mother and sisters during the lifetime of his mother, and that in the event of the survival of either of his sisters, they, or the survivor, might continue to occupy the premises for that purpose; and that in the event of either sister surviving her mother, or both of them surviving the mother, she or they might have the space of three years within which to remove and to establish another home. In the event of the sisters surviving the mother or not surviving, it was his intention, as I construe this item of the will, to direct that the premises be sold and the proceeds added to his residuary estate. The direction to sell is equally effective in either contingency, whether the sisters or one of them survive the mother, or whether they both died before her. There is, therefore, in my opinion, an equitable conversion of the premises, the proceeds fall into the residuary estate and are distributable as personalty.

The brief of the exceptants contains the question: What necessity could there be to imply that Green Street should be sold at the end of the estate for three years which followed the estate for the life of the mother? The evident answer to this is that after the death of the mother there was no purpose in maintaining the family home, and it should, therefore, be sold after reasonable time had been allowed to the sisters, if they survived, to remove therefrom and establish a new home.

Item three of the will is as follows:

"All the rest, residue and remainder of my estate real and personal I give devise and bequeath unto my Executor hereinafter named and The Provident Life and Trust Company of Philadelphia In Trust to invest the same and keep the same invested in loans of the United States, State of Pennsylvania and City of Philadelphia or in first mortgages on productive real estate at not less than one half the assessed value thereof and to pay over the income thereof in equal shares unto my sisters, Amelia N. Montgomery and Clara N. Hidden and my brother Daniel P. Dieterich during their respective lives and the life of the survivors or survivor of them the shares of my said sisters to be paid to them for their sole and separate use upon their own receipts respectively and free and clear of any control of any present or future husband of them and each of them and upon the death of said survivor of my brother and sisters In Trust to pay

and distribute the principle of my said residuary estate to and among the persons entitled to the same under the Intestate Laws of this Commonwealth."

Item four of the will appoints Augustus Boyd executor and gives him power of sale of real estate "at such time as he may in his discretion deem best," and authorizes him to make good and sufficient deeds therefor. This power of sale, it is contended on behalf of the exceptant, does not effect an equitable conversion of the real estate whereof the testator died seized in addition to No. 2001 Green Street. It is argued that an equitable conversion does not take place unless the direction to sell is absolute and unconditional and independent of any contingencies: Sill v. Blaney, 159 Pa. 264; Stoner v. Zimmerman, 21 Pa. 394; Irwin v. Patchen, 164 Pa. 51; and that a conversion does not take place where the direction simply amounts to a power of sale: Chew v. Nicklin, 45 Pa. 84; Hillard's Estate, 8 Luzerne Legal Reg. 137; Darlington v. Darlington, 160 Pa. 65.

On the contrary, it is argued that there was an absolute necessity to sell the real estate in order to carry out the provisions of the testator's will, and that there exists such a blending of his real and personal estate as to show an intention to create a fund out of both real and personal estate and to bequeath it as personalty, and that the proceeds from the sale of real estate are, therefore, distributable as personalty. The principles of law are well set forth in Lamberton's Estate, 40 Pa. Superior Ct. 548, where it was said:

"The presumption of law is against the fiction of conversion, but this presumption is repelled (a) where there is a positive direction to sell, or (b) where a sale is necessary to carry out the provisions of the will, or (c) where the testator has so blended his real and personal property as to unmistakably show an intention to raise a fund out of both real and personal estate which he bequeaths as money. In the first case, conversion results from the direct command of the testator. In the other two cases it is implied from the intention of the testator."

In support of these principles, Ramsey v. Ramsey, 226 Pa. 249, Neels's Estate, 252 Pa. 394, and Loew's Estate, 291 Pa. 22, are also cited.

In my opinion, there exists in the present case an implication that the testator intended an equitable conversion of his real estate by reason of the necessity to make a sale in order to carry out the provisions of the will, and the further reason that there is a blending of the real and personal estate to such an extent as to show an intention to raise a fund out of the real and personal estate which is bequeathed as money. Item four does not in terms contain a direction to sell all the real estate and convert it into money, but concludes: "Which (the purchase money) I direct my executor to receive and apply to the uses of this my will." While this direction may not of itself be sufficient to effect an equitable conversion, yet it does indicate an intention that the proceeds from the sale of real estate shall be blended with his personal estate to carry out the purposes of his will.

Counsel for the exceptants renew the argument which was presented to me in their behalf at the audit of the account, to the effect that in construing item three of the will the persons to whom distribution is to be made under the intestate laws of the Commonwealth are to be ascertained as of the date of distribution, and not as of the date of the death of the testator. The conclusion I have reached in construing this item of the will remains unchanged, and for the reasons stated in my adjudication, the entire estate, including the proceeds from the sale of No. 2001 Green Street and the other real estate owned by the decedent are awarded to Charles P. Hidden.

*John G. Kaufman* and *Albert T. Bauerle*, for exceptants.

*J. Edgar Wilkinson*, contra.

738

STEARNE, J., April 29, 1932.—The exceptions raise two questions: One as to whether the will worked an equitable conversion and the other as to whether those to take are to be ascertained as of the date of death of testator or of the surviving life tenant.

As to the first question, that of conversion, two classes of real estate are created by the will. One relates to a specified property, No. 2001 Green Street. All of the other real estate constituted part of the residuary estate.

The will, concerning the Green Street property, reads:

". . . I give and devise the use and occupancy thereof to my mother and my two sisters . . . during the life time of her my said mother and for the space of three years after her death to my said two sisters above named and the survivor of them. . . . *And if at the death of my mother my sisters be then both deceased I direct the said house to be sold and the proceeds thereof . . . added to my residuary estate as hereinafter provided.*"

As we construe testator's words, he carved out of the fee of the Green Street real estate a life estate to his mother, and after her decease he gave a term of three years' use and occupancy thereof to his two sisters or the survivor. As he made no disposition of the remainder, it necessarily fell into the residuary estate. He contemplated the possibility of the death of his sisters during his mother's lifetime, in which event he directed that upon the death of the mother the real estate be sold and the proceeds added to his residuary estate. As the sisters survived the mother, the situation he contemplated and provided for did not arise. In our opinion, the real estate, *as such*, subject to the rights of the sisters, passed into the residuary estate. While the testator may have had a different thought, nevertheless we feel bound by the words which he employed, and cannot rule any implied intent to convert.

However, this consideration becomes purely academic when we consider the residuary clause. Exactly the same result ensues. The residuary estate (after the death of the mother, with living sisters of testator: relating to Green Street) included *all* real estate, blended with personal estate. The words of the residuary clause are as follows:

"All the rest, residue and remainder of my Estate real and personal I give devise and bequeath unto my [named Trustees—the executor and a trust company] *In Trust to invest the same and keep the same invested in loans of the United States, State of Pennsylvania and City of Philadelphia or in first mortgages on productive real estate at not less than half the assessed value thereof* and to pay over the net income thereof in equal shares [to his sisters and brothers and survivor] . . . during their respective lives . . . and . . . upon the death of said survivor . . . *In Trust to pay and divide and distribute the principal of my said Residuary Estate to and among the persons entitled to the same under the Intestate Laws of this Commonwealth.*"

Testator then appointed an executor and gave him "full power" to sell and convert into cash all his real estate at either public or private sales and directed that the purchase money be received and applied "to the uses of this my will."

We are unanimously of opinion that all of the real estate was converted into personal estate by *necessary implication*. In no other way could the terms of the trust be complied with. How else could the trust residuary estate be invested in bonds (Federal, state and municipal) and first mortgages (of a definite ratio in value)? It required cash to do this. Furthermore, upon the death of the surviving life tenant, real estate could not be employed to *"pay and divide and distribute"* the principal. Relating to the division of the prin-

cipal upon the termination of the trust, the words "grant and convey" are, in the circumstances, conspicuously absent. To "invest" as directed and "to pay, divide and distribute" presupposes the conversion of such real estate into cash. To effectuate the testamentary scheme, express authority was given the executor to sell, which, the record discloses, was in fact exercised.

That there was a conversion seems unquestioned: Severns's Estate, 211 Pa. 65; Davidson v. Bright, 267 Pa. 580; Reel's Estate, 272 Pa. 135; Bailey's Estate, 276 Pa. 147; Battenfeld v. Kline, 228 Pa. 91; Tarrance v. Reuther, 185 Pa. 279; Laughlin's Estate, 131 Pa. 333.

Concerning the question as to the date of ascertainment of the next of kin, whether at the testator's death or that of the surviving life tenant, we cannot profitably add to what the auditing judge has so concisely and accurately written. In the case of a will effective prior to the Act of June 29, 1923, P. L. 914, heirs and next of kin are ascertained as of the date of the death of testator unless there is an express or implied direction to the contrary. We agree with the auditing judge that there were no such directions.

Two sets of exceptions have been filed. No. 1 in each set is sustained, but all others are dismissed, and the readjudication, as herein modified, is confirmed.