## Smith's Estate.

Argued January 16, 1934. Before Frazer, C. J., Simpson, Kephart, Schaffer, Maxey, Drew and Linn, JJ.

*J. W. McWilliams,* of *Tustin & Wesley,* for appellant, Nos. 396 and 397.

*R. M. Remick,* of *Saul, Ewing, Remick & Saul,* for appellant, Nos. 394 and 395.

*George F. Baer Appel,* with him *J. C. Murtagh,* of *Townsend, Elliott & Munson,* for appellee.

OPINION BY MR. JUSTICE LINN, March 19, 1934:

These appeals are from the final distribution of the residuary trust estate of J. Rundle Smith, who died in 1908. After the death of his widow, who was life tenant, his trustees filed two accounts of the property which had been awarded to them at the adjudication of the executor's account, one of the personal and the other of the real estate.

Two questions are presented: Did the widow share in the residue? Was there a conversion? The residuary clause provided:

"SIXTH: All the rest, residue and remainder of my estate, real personal and mixed of whatsoever kind or nature, or from whomsoever inherited, I give, devise and bequeath unto The Real Estate Trust Company of Philadelphia, in Trust Nevertheless to keep the same invested in good and safe securities (but without restriction to what are known as legal investments), with power to change said investments at discretion, to square, exchange, sell or buy real estate without obligation upon the purchaser to see to or be responsible for the application of the purchase money, and the income thereof to collect and pay over at convenient times as follows: the income of said residuary estate shall be paid to my wife Gertrude Meryweather Smith for and during the term of her natural life. And upon the death of my wife Gertrude Meryweather Smith, to pay over the principal of my said residuary estate to such persons and for such estates as the same would go to and vest in, under the Intestate Laws of Pennsylvania had I died intestate."

The learned court below was of opinion: (a) that decedent's widow was within the class of persons whom "the same would go to and vest in, under the Intestate Laws," had he died intestate; (b) that there was a conversion of the real estate; (c) that one-third of the total principal must be awarded to the widow's executor. These conclusions are challenged by the only child of decedent and by the assignee of part of her share.

Did part of the principal vest in the widow under the direction "upon the death of my wife Gertrude Meryweather Smith, to pay over the principal of my said residuary estate to such persons and for such estates as the same would go to and vest in, under the Intestate Laws of Pennsylvania had I died intestate"?

This will* is governed by the general rule, long in

---

* As testator died in 1908, the Act of June 29, 1923, P. L. 914, declaring the construction of wills in certain classes of cases, has no application: Section 2 of the act; Bonsall's Est., 7 D. & C. 421, affirmed 288 Pa. 39, 135 A. 724.

effect, that "where a testator gives his estate to his heirs or next of kin or to those who may be entitled under the intestate laws, these classes are to be determined as of the date of his death, even though a life estate intervenes,—the only exception to the rule being where the will contains an expression showing a clear and unequivocal intention to the contrary [citing authorities]. Further, it is immaterial that the life tenant is one of the class who will take the remainder: Bache's Est., 246 Pa. 276, 279"; Whiteside's Est., 302 Pa. 452, 454, 153 A. 728, 729. See, also, Bechtel's Est., 303 Pa. 107, 154 A. 366.

To bring themselves within the exception,—"where the will contains an expression showing a clear and unequivocal intention to the contrary,"—appellants present various considerations, said to be suggested by the words of the will in their relation to the circumstances in which the will and codicil were executed in 1905 and 1906.

When testator made the will, the immediate objects of his bounty were his third wife (the life tenant), an expected child, and the appellant, an adult daughter by his first wife; before the codicil was executed, the child had died. Testator devised his residence to his widow in fee; devised his real estate at Bay Head, received from his second wife, to her sons in fee; personal property of a genealogical interest, he gave to a cousin; the remainder of his personal property in his residence, he gave to his widow. To his daughter, the appellant, he gave $15,000.

Appellants contend that the clear intention to give the widow only a life interest in the residence is shown by the facts: that she received absolutely certain property specified; that she received the entire income of the residue for life; that there was a remainder over, without power of appointment in her; that testator intended only such connections by marriage to take as he specified (his second wife's sons) ; that presumably he did not intend to disinherit his daughter; that these considerations exclude the idea of increasing his widow's estate,

which might pass to strangers (as, the briefs state, will be the fact). But the court must give effect to the words of the will, which leave no support for the inferences suggested by appellants. Testator prescribed what his daughter (who was not disinherited) and his widow should receive; the language employed had a well-recognized meaning; if he did not anticipate and provide for a contingency possibly arising in the ultimate distribution of his widow's estate, the court may not make another will for him: Cf. Tatham's Est., 250 Pa. 269, 95 A. 520; Stoler's Est., 293 Pa. 433, 143 A. 121. His direction "to pay over [on the death of his wife] the principal of my said residuary estate to such persons and for such estates as the same would go to and vest in, under the Intestate Laws of Pennsylvania had I died intestate," clearly designates her, in the light of the then settled rule, as a member of the class entitled, and, as there is no clear expression of contrary intention, the award to her personal representative was correct.

We also agree that there was equitable conversion; that the words used indicate intention to create a fund from both kinds of property and to bequeath it as money. Throughout the will, it appears that testator understood the distinction between words technically applicable to realty and to personalty, and correctly employed them. After disposing of property specifically, he gave his remaining "estate, real personal and mixed of whatsoever kind or nature" to the trustee "to keep the same invested in good and safe securities (but without restriction to what are known as legal investments), with power to change said investments at discretion, to square, exchange, buy or sell real estate......and the income thereof to collect and pay over......"; and, upon his widow's death, "to pay over the principal ......" He was creating and dealing with a fund intended for the production of income during the lifetime of the widow and for ultimate distribution as money,—

442

not with so much realty and personalty: Marshall's Est., 147 Pa. 77, 23 A. 391; Battenfeld v. Kline, 228 Pa. 91, 77 A. 416; Bailey's Est., 276 Pa. 147, 119 A. 907; cf. Dieterich's Est., 15 D. & C. 733.

Decrees affirmed, costs to be paid out of the fund for distribution.