## Wiltbank's Estate

Before Van Dusen, P. J., Sinkler, Klein, Bolger, Ladner, and Hunter, JJ.

*William Carson Bodine*, of *Pepper, Bodine, Stokes & Schoch*, for exceptant.

*Joseph H. Grubb*, of *Newbourg & Grubb*, contra.

KLEIN, J., June 11, 1943.—Testator, William W. Wiltbank, at one time a judge of Court of Common Pleas No. 2 of Philadelphia County, died on January 23, 1914. By the third paragraph of his will he provided that the net income from his estate, after the payment of certain annuities, be paid one half to each of his two daughters, Gertrude and Marian, for their lives. He provided, further, that upon Gertrude's death without child or children:

". . . should *there then survive no issue* the said *principal is to go* to my heirs as if in respect thereof I had died intestate excluding however the son of my daughter Marian by her late husband James H. Colfelt:" (Italics supplied.)

He then directed that upon the death of his daughter Marian the principal producing the income which she received should go to her surviving children "by a husband other than her late husband James H. Colfelt". Testator then repeated verbatim the language we have quoted above.

The daughter Marian died two weeks after the testator, on February 6, 1914, leaving no issue but a son, Brinton W. Colfelt, born of the marriage with James H. Colfelt. The principal producing the income enjoyed by her was awarded to her sister, Gertrude, by adjudication of Gummey, J., dated February 19, 1915.

Gertrude died on February 26, 1942, leaving no issue, and the present accounting was occasioned by her death. The auditing judge held that the word "then" was used by testator as an adverb meaning *at that time* and not as a conjunction meaning *in that event*.

He therefore concluded that the heirs of testator must be determined as of the date of the death of the life tenant, Gertrude. Exceptions were taken to this ruling by the administrator of Marian's estate, who contends that the testator's heirs must be ascertained as of the date of his death, in which event Marian's estate would participate in the distribution.

Counsel for the interested parties have supplied us with exceptionally helpful briefs in which they have carefully set forth the applicable law and the pertinent decisions. Mr. Bodine, in behalf of exceptant, cited a great many cases, in each of which the heirs were ascertained as of the date of the testator's death. Mr. Grubb, on the other hand, relied upon cases in which the heirs were ascertained as of the date of the termination of the respective trusts.

We have studied all of these cases carefully and have difficulty in reconciling some of them. This, however, is not surprising. This apparent inconsistency in cases involving construction of testamentary writings caused Mr. Justice Drew in Byrne's Estate, 320 Pa. 513 (1935), to say at page 522:

"The difficulties which pervade this whole subject, vexing as it is and always has been to courts and lawyers, recall a remark of Sir Edward Coke's: 'Wills and the construction of them do more perplex a man than any other learning, and to make a certain construction of them, this excedit jurisprudentium artem.' The effort always is to determine the intention of the testator, and, unless public policy forbids it, to enforce that intention, so that in death his property may be faithfully disposed of according to his will. Courts have this duty in the last analysis, and cases, even in the same jurisdiction, which seem to be, on the one hand, completely parallel, or, on the other hand, in irreconcilable conflict, are really not so because in each instance the result reached is founded upon the court's decision, in view of all of the circumstances, as to what the testa-

tor intended. As was said by Chief Justice Marshall in Smith v. Bell, 31 U. S. 68, at page 80, quoting from 3 Wils. 141, 'Cases on wills may guide us to general rules of construction; but, unless a case cited be in every respect directly in point, and agree in every circumstance, it will have little or no weight with the court, who always look upon the intention of the testator as the polar star to direct them in the construction of wills.' The slightest variations in language or in attending circumstances may lead a court to wholly different conclusions with regard to the testator's intent, and therefore to wholly different results. For that reason the conflict which appears to exist among the cases, and which is inherent in the problem, is in fact no more than an apparent one."

In order better to understand decedent's testamentary plan and to help us ascertain his true intention, we have carefully studied this entire will from beginning to end. It is clear from such a study that testator nowhere in the will makes any reference to, or provision for, the contingency of the death of any of the beneficiaries in his lifetime. The whole scope of the will shows that testator anticipated that his two daughters would survive him, and that they, in turn, would be survived by his grandson, Brinton. See Miller's Estate, 275 Pa. 30 (1922).

With this in mind, let us analyze paragraph 3 of this will. It must be immediately noted that testator used exactly the same language in disposing of the share of principal passing at Gertrude's death as he used in connection with the share passing upon Marian's death. It seems evident that with respect to Marian's share he intended his heirs to be determined as of the date of her death, because he directed that this share should, on her death, go to his heirs, excluding his grandson, Brinton. Judge Wiltbank must have known that if his daughter Marian survived him, she and her son, Brinton, could not have been "heirs" at

the same time. Consequently, by excluding Brinton from the class of heirs taking on Marian's death, testator must have intended the class to be ascertained as of the date of her death, because Brinton could not possibly be an heir unless his mother had first died.

Since the expression used by testator in disposing of the share of the principal from which Gertrude received the income was identical with the language used with respect to Marian's share, we must assume that he intended this language to have the same meaning in both cases: Blackburne's Estate, 290 Pa. 55 (1927); Wraught's Estate, 347 Pa. 165 (1943). It, therefore, follows that since the testator's heirs with respect to Marian's share must be ascertained as of the date of her death the heirs who take Gertrude's share must be determined as of the date of Gertrude's death.

We believe that this conclusion is strengthened by the following language which is found at the end of the third paragraph:

". . . but it is my intention and declaration that if in any event in respect to any one or more or all of the subjects of this will I am found to have died intestate this will shall operate to exclude the son of my daughter Marian by her late husband James H. Colfelt and all claim through him from any participation in my estate."

This language suggests that testator contemplated that his heirs might have to be ascertained on more than one occasion and that the class might be composed of different individuals. Just as it is evident that the grandson, Brinton, could not possibly take as an heir of testator in his mother's lifetime, so it is equally clear that no one could claim through him under the intestate laws unless he had first died. This further refutes exceptant's argument, because there could only be one set of heirs if the heirs must be determined as of the date of testator's death. This class would be fixed and not subject to change.

We are not unmindful of the fact that the Act of June 29, 1923, P. L. 914, has no application to the present case because Judge Wiltbank died in 1914 and prior to the enactment of this statute the general rule required the determination of testator's heirs as of the date of his death unless the will contained an expression showing a clear and unequivocal intention to the contrary: Smith's Estate, 314 Pa. 437 (1934) ; Whiteside's Estate, 302 Pa. 452 (1931). We believe, however, the present will clearly shows such a contrary intention. The use of the expressions "should there then survive no issue" and "the said principal *is to go*", which are words connoting futurity, read in the light of what we regard as testator's manifest intention, convinces us that the decision of the auditing judge was correct.

We are fortified in our conclusion by the developing trend toward the statutory rule indicated by Mr. Justice Maxey (now Chief Justice) in Laughlin's Estate, 336 Pa. 529 (1939), at page 536:

"This act does not apply to the interpretation of the will now in controversy, whose maker died in 1919, but it is here referred to as a legislative establishment of a statutory presumption, and it is reasonable to believe that this presumption is 'a conclusion firmly based upon the generally known results of wide human experience:' See *Watkins v. Prudential Ins. Co.*, 315 Pa. 497, 504, 173 A. 644."

We need not consider the other exceptions as under our ruling the exceptant has no further interest in this estate and none of the other parties in interest excepted to the adjudication.

The exceptions are therefore dismissed and the adjudication confirmed absolutely.