**Newhall Trust**

*Saul, Ewing, Remick & Saul,* for accountant.

*Barbara Ann Duffy,* for petitioner.

*Henry N. Fineman,* p.p., guardian ad litem and trustee ad litem.

LEFEVER, J., June 6, 1969.—On May 22, 1922, Ellen H. Newhall and her husband Cushman Newhall, as settlors, executed an irrevocable spendthrift deed of trust. Paragraph 1 of the deed provided, inter alia, ". . . to pay the income to the said Ellen H. Newhall for and during the full term of her natural life . . . and upon her death to divide the fund into as many shares as she may have children then living and

children dead represented by descendants then living. As to any share falling to a child of the said ELLEN H. NEWHALL, to pay the income to such child of ELLEN H. NEWHALL for and during the term of his or her natural life and upon his or her death the principal to the children and descendants of deceased children per stirpes of said child so dying. . . ."

The trust corpus consisted of one-half of Ellen H. Newhall's "right, title and interest in all of the assets and property, real and personal, of the estate of J. S. Rundle Smith," her father, who died in 1908. However, owing to extensive litigation on the death in 1933 of his widow, who was the life tenant of a trust created by him (see Smith's Estate, 314 Pa. 437 (1934) ), and the financial panic of the 1930's, the principal of the said Smith trust was not finally distributed and the instant trust funded until September 29, 1944. At that time the corpus of the instant trust amounted to only $18,983.49, a fraction of the $70,808, which was the amount Mrs. Newhall expected to constitute the trust corpus when she and her husband executed the trust instrument now before us on May 22, 1922. The present market value of the trust corpus (shown in the account as of March 21, 1968) is $28,451.29.

Ellen H. Newhall died on January 25, 1965; her husband predeceased her.

At her death, Ellen H. Newhall was survived by four living children, namely, Henry Smith Newhall, Marjorie Newhall Heckscher, Annette Newhall Griffitts, and Ellen Newhall Miller and a number of grandchildren and great grandchildren. All four children are still living. Therefore, by the terms of the deed the corpus in reality consists of four trusts, each with a different termination date, namely, the dates of death of each of said four children.

At the audit, a petition to terminate the trust was presented by Henry Smith Newhall. In view of the fact

that all parties had notice of this petition, no citation was issued, but evidence in support thereof was heard at the audit. Petitioner's children and his sisters, Mrs. Heckscher and Mrs. Miller, and their children all have signed written consents and joinder in the petition and a request that the principal of the trusts be distributed outright to the present life tenants. At the audit, the fourth child of settlor, Mrs. Griffitts, opposed termination. However, by letter dated May 19, 1969 (which is attached hereto) William H. S. Wells, Esquire, attorney for the accountant, informed the court that "with great reluctance she has authorized me to state that she will withdraw her objection." The accountant, pursuant to its duty to protect the trust, opposes termination. Henry N. Fineman, Esquire, who was appointed by the court, by decree dated June 17, 1968, as guardian for minor descendants and trustee ad litem for all possible unborn and unascertained interests, also objects to termination.

The purpose of filing the account was "for confirmation and in order to permit certain parties in interest to raise the question as to whether or not the trust may be terminated." . . .

The guardian and trustee ad litem has filed a comprehensive and exhaustive report. He approves the account, but opposes termination of the trust.

The testimony presented at the audit shows that the market value of the corpus of the trust is presently $28,451. However, when this amount is divided into four trusts the principal of the trust for each child is only $7,113 and the income therefrom payable to each beneficiary is about $280 per year.

By letter, dated April 22, 1960, addressed to Mr. Lawrence of the First Pennsylvania Company, settlor, Ellen H. Newhall, stated:

"You will recall we were discussing the possibility (after my death) of petitioning the Court to distrib-

ute it to my children, due to the comparatively small income involved, and the fact that they are now all middle aged, whereas, when the Trust was set up they were all minors! I should be very glad if the Court would permit this, as the purpose of the Trust has been performed, and I should like my children to have control of their own share of it. Perhaps it would help to file this letter where it will be available when and if you go before the Court."

In a letter, dated "Feb. 12th 1964," addressed to her "Dear Children," and found with her will after her death, Ellen H. Newhall wrote:

"As you all know many years ago I established an irrevocable Deed of Trust with income to myself for life. I have regretted many times the fact that I made the trust irrevocable. However, once the trust instrument was executed there was nothing that could be done about it.

"After I am gone the income from this trust will be paid to the four of you in equal shares.

"Dividing what is presently *not* a nominal income for one person into four parts would mean that each of you would get a yearly income from this trust of very little and would serve very little purpose in your overall financial picture.

"You also know that the trust, when I finally received the principal from my father's estate was less than 1/3 of the amount I had expected it to be.

"For the benefit of all of you I hope that you will petition the proper Court to have the trust terminated because of its nominal size so far as each of you is concerned and the fact that it no longer serves the purpose for which it was created. If your petition were approved by the Court it would mean that each of you would get a proportionate share of the principal which would mean something to you whereas a smaller income each year would be of little consequence. It is my

wish that you will do this. I only regret that so little was left when I finally received the principal of my father's estate which he left me to use as I pleased."

It is clear from these letters that settlor was of the opinion that the original purpose of the trust had failed because of the smallness of the trust corpus and she intended that it be terminated. Under Bowers' Trust Estate, 346 Pa. 113, we must take into consideration settlor's opinion and intention as part of her jus disponendi.

In addition, Henry Smith Newhall testified that settlor told him she had been advised by her lawyer, who was a distinguished member of the bar, and the trust officer many times that (1) there was no way for her to break the trust during her lifetime, but (2) if her children petitioned the court after her death there was a strong possibility that the court would terminate this type of trust.

This case is similar to Miller Estate, 27 D. & C. 2d 239, in which President Judge Klein terminated a small trust, stating at pages 241, et seq.:

"No useful purpose can be served by continuing the grasp of her 'dead hand' over this minuscule trust. Tremendous changes have taken place in our economy since 1900. One of the most significant has been the reduced purchasing power of the dollar resulting from the creeping inflation which has engulfed us. Paradoxically, while wages and prices of commodities, generally, have risen sharply over this period, the average earnings of trust estates have dropped. Moreover, as a result of the many new taxes which have been imposed and other forms of governmental intrusion into estates management, the problems of supervising and administering very small trusts have become increasingly vexatious and troublesome, both to the courts and to fiduciaries. As a consequence, the courts are striking down, whenever possible, these so-called nui-

64

sance trusts, where the corpus is so small that the benefits do not justify the trouble incident to their administration. See O'Neill Estate, 7 Fiduc. Rep. 451 (1957); Falkner Trust, 3 Fiduc. Rep. 495 (1953); Montana Estate, 81 D. & C. 99 (1952); Kelby Estate, 80 D. & C. 1 (1952); Exley Estate, 67 D. & C. 508 (1948). See also: Brown Trust 7 Fiduc. Rep. 517 (1957). . . .

"Under the circumstances of the present case, the balance of principal being very small and the income produced therefrom almost negligible, we conclude that the purpose of the trust has failed and the prayer of the life tenant's petition to terminate the trust is granted. In reaching this conclusion, we refrain from expressing our views or passing upon the constitutionality of a retroactive application of the 1956 amendment to section 2 of the Estates Act of 1947. . . ." Accord: Hobbs' Trust, 16 Fiduc. Rep. 543; Will Estate, Phila. O. C. No. 3756 of 1960; and Hulseman Estate, adjudication dated January 25, 1963, Phila. O. C., Jan. term 1917, no. 484.

The four trusts, which make up the instant trust, constitute similar small, nuisance trusts. Moreover, as in so many trusts created before or during the financial panic of the 1930's, the principal of the instant trust has become very much smaller than when the trust was created and, therefore, the original purpose of the trust has failed: Auchu's Estate, 38 D. & C. 33; and cases cited in Miller Estate, supra, and Kelby Estate, supra; Restatement, Trusts §336. Therefore, the instant trust should be terminated. We are fortified in this conclusion by the fact that three of the life tenants and their children, all of whom are sui juris, have approved the termination of the instant trust and the distribution of principal thereof to the four life tenants (settlor's children) and that the fourth life tenant has withdrawn any objection thereto.

Accordingly, the auditing judge concludes and rules that owing to the negligible income produced by these trusts, the small balance of principal in each trust, the fact that the trusts have failed of their purpose, and the consent of persons in interest who are sui juris, the trusts are hereby terminated. Awards will be made of one-fourth of the net principal to each child. . . .

And now, June 6, 1969, the account is confirmed nisi.